**Joel CAVAZOS, Jr. and Cassandra L. Cavazos and the Trusts Created For Their Benefit, Through Lucille Cavazos, As Next Friend, Appellants,**

v.

**Joel CAVAZOS, Sr., Appellee.**

**No. 13–96–148–CV.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 14, 1996.

Rehearing Overruled Jan. 9, 1997.

Ken Dahlberg, Dallas, Larry J. Adams, Corpus Christi, for appellants.

Terriann Trostle, Kathleen W. Osman, Stefani E. Shapiro, Fulbright & Jaworski, Houston, for appellee.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

Joel Cavazos, Jr. and Cassandra L. Cavazos, through their mother, Lucille Cavazos, as plaintiff and next friend, brought suit claiming that an addendum (Schedule Five) to the agreement incident to divorce entered into by Joel Sr. and Lucille created a trust in their favor. In response, Joel Cavazos, Sr., appellee, filed a motion for summary judgment arguing that (1) Schedule Five is not part of the agreement or the decree of divorce, and, alternatively, (2) Schedule Five is insufficient to create a trust. The trial court granted appellee's motion. Appellants contend, in two points of error, that the trial court erred in granting the motion for summary judgment. We affirm.

Lucille and appellee were married in 1977. At that time, appellee and his parents operated a bakery. In 1979, the business was incorporated as C & C Bakery, Inc. Although

appellee and his parents held all the shares of the company, both appellee and Lucille were active participants in the business which grew rapidly. By the time of their divorce on June 25, 1984, appellee was the sole shareholder.

At the time of the divorce, appellee and Lucille entered into an agreement incident to divorce (the Agreement) which was approved by the court and incorporated into the divorce decree. The Agreement refers to and incorporates only four schedules which set forth the property assigned to each spouse and the liabilities assumed by each spouse. Schedule One assigned assets to Lucille Cavazos and, among other things, provided that Lucille receive $80,000 "in lieu of any division of community property." Schedule Two assigned assets to appellee among which was "[t]he business known as C & C Bakery, Inc." and all of its stock and assets. Schedule Three provided that Lucille assumed no liabilities and Schedule Four provided that appellee assumed all liabilities incurred by the parties. The divorce court found this division of the Cavazos' estate "just and right" and "in the children's best interest." Accordingly, the court entered the decree, incorporating the Agreement. A fifth schedule, Schedule Five, was also filed with the court. Schedule Five, on a single, seperate page, provides:

1. Twenty-five (25%) percent of the Stock in C & C Bakery, Inc. shall be placed in trust for the minor children, Joel Cavazos, Jr. and Cassandra L. Cavazos. The stock to be transferred subsequent to January 1, 1985, and at such time as the stock has ceased to be security for the indebtedness owed to Baldomero Cavazos and wife, Elisa T. Cavazos.

This schedule was not referenced in or incorporated into either the decree or the Agreement.

On June 1, 1995, over ten years after the divorce, appellee sold all the stock of C & C Bakery, Inc. for approximately eleven million dollars. Appellee did not transfer any of the stock or the profits from the sale into a trust. Therefore, the Cavazos children, through Lucille Cavazos as next friend, filed a pleading captioned "Motions to Enforce or to Clarify the Agreement Incident to Divorce and for Contempt and Original Petition for Injunction and Damages." In their pleading, they asked the court to declare that Schedule Five created a valid trust and to enforce it. Appellee filed a counterclaim and a motion for summary judgment asking the court to declare that Schedule Five is not a part of the Agreement, that it does not constitute a trust, or, alternatively, that it is revocable.

Without specifying the grounds relied upon, the trial court granted appellee's motion for summary judgment and ordered the proceeding dismissed with prejudice.

In two points of error, appellants claim that the trial court erred in granting the motion for summary judgment. Specifically, appellants contend that the summary judgment is a collateral attack on the divorce decree, that Schedule Five was an integral part of the agreement incident to divorce, and that there are other fact questions remaining for the jury.

■ The standards for reviewing a summary judgment are well established. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of law. *Id.* The reviewing court must accept all evidence favorable to the non-movant as true and every reasonable inference must be indulged in favor of the non-movant. *Id.* In that regard, evidence which favors the movant will be considered only if it is uncontroverted. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

■ Furthermore, where, as here, the order granting a summary judgment does not specify the particular grounds sustained, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 489 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Accordingly, if any of the grounds asserted by appellee in his motion for sum-

mary judgment are meritorious, we must affirm.

■ Before reaching that question, however, we must address a threshold issue raised by appellants. Appellants contend that the March 5, 1996 order granting appellee's summary judgment is void as an impermissible collateral attack on the divorce decree. Appellants are correct in asserting that a trial court may not set aside or alter a judgment after the expiration of its plenary power, and that an order attempting to do so is void. *See, e.g., Rogers v. Clinton,* 794 S.W.2d 9, 11 (Tex.1990) (court could not set aside judgment in personal injury action when party had withdrawn the motion for new trial); *Buttery v. Betts,* 422 S.W.2d 149, 151 (Tex.1967). However, we hold that the trial court, in granting the summary judgment, was not altering or correcting the decree or the Agreement but, rather, was merely interpreting the Agreement.

■ It is clear that a trial court retains the inherent power to clarify, interpret or enforce an agreement incorporated in a divorce decree. *Allen v. Allen,* 717 S.W.2d 311, 312 (Tex.1986); *McGehee v. Epley,* 661 S.W.2d 924, 926 (Tex.1983). Appellee, in his motion for summary judgment, merely asked the trial court to determine the legal effect, if any, of Schedule Five. In granting summary judgment, the trial court merely interpreted the Agreement and found that Schedule Five was never a part of the decree or the Agreement.

Having found that the summary judgment was not a collateral attack on the divorce decree, we now turn to the merits of the summary judgment. We hold that the trial court correctly determined that, as a matter of law, Schedule Five was never incorporated in the decree or the Agreement. Accordingly, we affirm.

■ A marital property agreement, although incorporated into a final divorce decree, is treated as a contract and its legal force and meaning are governed by the law of contracts. *Allen,* 717 S.W.2d at 313. Under rules of contract construction, in order for a document to be considered part of a signed contract, it must be signed or referred

to in the signed contract. *Owen v. Hendricks,* 433 S.W.2d 164, 166–67 (Tex.1968); *MTrust Corp. N.A. v. LJH Corp.,* 837 S.W.2d 250, 253–54 (Tex.App.—Fort Worth 1992, writ denied); *Milam Dev. Corp. v. 7*7*0*1* Wurzbach Tower Council of Co–Owners, Inc.,* 789 S.W.2d 942, 945 (Tex.App.—San Antonio 1990, writ denied). Schedule Five was not signed and it was not referenced either in the decree or the Agreement. The mere fact that Schedule Five, at some point became attached to the court documents, does not make it a part of the Agreement. *See Milam Dev. Corp.,* 789 S.W.2d at 945.

■ Additionally, under the rules of incorporation by reference, Schedule Five is not part of the Agreement. Under this rule, the absence of a specific reference to another document establishes that the parties did not intend to contract with reference to that document. *Clutts v. Southern Methodist Univ.,* 626 S.W.2d 334, 336 (Tex.App.—Tyler 1981, writ ref'd n.r.e.). Appellants concede that Schedule Five is not specifically mentioned in either the decree or the Agreement but argue that the rule of incorporation by reference should not apply because, in the case at hand, the court may act as an impartial third party and evaluate the likelihood of fraud or fabrication. This argument has been expressly rejected by the Texas Supreme Court. *See Owen,* 433 S.W.2d at 167. Instead, the Texas Supreme Court held that the only permissible extension "of the doctrine requiring an express reference in the signed paper is where the signed paper at the time of the signature can be shown from its contents to be based on an adoption of a then existing unsigned paper." *Id.* at 167 (quoting Samuel Williston, A Treatise on The Law of Contracts § 582 (3rd ed. 1961)).

No such showing can be made in the case at hand. In fact, the contents of the Agreement tend to negate the incorporation of Schedule Five. First, the only schedules referenced in the Agreement are Schedules One, Two, Three, and Four. The Agreement does not mention Schedule Five.

Second, Schedule Two, which is unquestionably a part of the Agreement, awards appellee "[t]he business known as C & C

Bakery, Inc., including but not limited to all stock, furniture ... and any and all rights and privileges, past, present, or future, arising out of or in connection with the operation of such business." It makes no mention of Schedule Five or any intent to place twenty-five percent (25%) of the stock in trust.

Third, Schedule One, which is also unquestionably part of the Agreement, states that Lucille Cavazos is assigned $80,000 "in lieu of any division of community property." Thus, her parol affidavit suggesting that she intended the existence of Schedule Five to be consideration for giving up her alleged community interest in C & C Bakery, Inc. is belied.

Last, the Agreement contains a merger clause. The merger clause expressly states that the parties acknowledge that they have carefully read the Agreement "including all schedules and other documents to which it refers ... and that this instrument expresses the entire agreement between the parties concerning the subjects it purports to cover." Thus, the merger clause expressly negates incorporation of a schedule that is not internally referenced.

Accordingly, under the rule of incorporation by reference, Schedule Five is not part of the Agreement.

Appellants further argue, however, that these rules of contract construction should not apply to the case at hand because the agreement incident to divorce has been incorporated into the judgment of the court. However, the rules of contract interpretation apply equally to agreements incorporated into final judgments. *See, e.g., Allen,* 717 S.W.2d at 313; *McGoodwin v. McGoodwin,* 671 S.W.2d 880, 882 (Tex.1984).

Finding that the trial court correctly determined, as a matter of law, that Schedule Five was not part of the Agreement entered into by the parties, we overrule appellants' points of error and affirm the judgment of the trial court.