**Belinda T. MEZA, Appellant,**

v.

**SERVICE MERCHANDISE COMPANY, INC. and Arturo Acuna, Appellees.**

No. 13–96–132–CV.

Court of Appeals of Texas, Corpus Christi.

July 3, 1997.

Rehearing Overruled Aug. 7, 1997.

James W. Wray, Jr., Chaves, Gonzales & Loblit, Corpus Christi, Scott D. Schmidt, Corpus Christi, for Appellant.

Rebecca R. Kieschnick, Clay E. Coalson, Meredith, Donnell & Abernethy, Corpus Christi, Paul Swacina, Linda C. Breck, Thomas F. Nye, Brin & Brin, Corpus Christi, for Appellees.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

This is an appeal from a summary judgment. Appellant, Belinda Meza, sued appellees, Service Merchandise Company and Arturo Acuna ("Acuna"), for tortiously interfering with Meza's contract of employment with Academy Window Coverings ("Academy"). The question presented for review is whether the circumstantial evidence offered by Meza in response to appellees' motion for summary judgment is sufficient to raise a fact issue. Finding the evidence sufficient, we reverse and remand.

## BACKGROUND

Meza was a customer service clerk at Service Merchandise. In February 1993, she applied for a position with Academy and met with one of the owners, Ernestine Valadez, who offered her a position to begin the following Friday. Meza returned to work at Service Merchandise the next day, and gave notice to Connie Bernal, who was second in command under Acuna, the store manager. While Bernal seemed satisfied with Meza's notice, Acuna was not. The following Monday, Acuna told Meza that due to her insufficient notice, she would not be eligible for rehire. Acuna allegedly told Meza he knew the Valadez family, and that, "If you dog me in any way when you're behind that service desk, I will call them up and I will let them know." [1]

Upset with this confrontation, Meza called a number provided for employees who wished to complain about management. In response to this call, Meza received a telephone call from Robert M. Leiker, District Human Resources Manager for Service Merchandise. Leiker assured Meza she would be eligible for rehire and indicated he would speak to Acuna.

That night, Meza received a call from Acuna. Rather than being apologetic, however, Acuna asked Meza why she felt it necessary to go over his head. Acuna told her that Leiker "was not out there for you. He's there to protect me."

On Thursday, the day before she was to start her new position, Meza called Mrs.

---

1. What Acuna would let the Valadezes "know" was that Acuna believed Meza had stolen money from Service Merchandise. Prior to this incident, Meza had been subjected to an investigation regarding cash shortages for which Acuna suspected Meza. No adverse action was taken against Meza.

Valadez to find out when she should report for work. Mrs. Valadez told her the Valadez family had discussed the employment and "decided we didn't need you after all. There wasn't an opening after all."

## ANALYSIS

Summary judgment is proper when the movant shows by uncontroverted or conclusive summary judgment evidence that no issue of material fact exists and he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether a disputed material fact issue precludes summary judgment, a reviewing court will take as true all evidence favorable to the nonmovant and will indulge all reasonable inferences and resolve all doubts in the nonmovant's favor. *Id.*

 In order to prevail on her claim of tortious interference, Meza was required to establish (1) the existence of a contract subject to interference; (2) the act of interference was willful and intentional; (3) such intentional act was a proximate cause of plaintiff's damages; and (4) actual damage or loss occurred. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex.1993); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991). If appellees disproved one of these four elements, the trial court did not err in granting summary judgment. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975); *Lara v. Tri–Coastal Contractors, Inc.*, 925 S.W.2d 277, 278 (Tex.App.—Corpus Christi 1996, no writ). Appellees moved for summary judgment asserting there was no interference with a present or future contract and alternatively, that neither Merchant Service Merchandise nor Acuna caused Meza's damages.[2] The order did not specify on what basis the court granted the summary judgment, thus we must affirm the judgment if either one of

the theories advanced in the motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989); *Cavazos v. Cavazos*, 941 S.W.2d 211 (Tex.App.—Corpus Christi, 1996, writ requested).

Appellees' summary judgment proof consisted primarily of the affidavit and excerpts from the deposition of Ernestine Valadez, several of Valadez' adult children, Acuna and Meza. Mrs. Valadez stated she was the person responsible for hiring new employees. She did not know Acuna or his father. No one attempted to influence or interfere with her decision to not hire Meza. The Valadez children, Roy, Ruben, and Richard, testified they did not know Acuna or his father. They did not testify, however that Acuna had not called them. Robert Valadez, another son, stated he was not involved in the hiring process, that he knew Acuna from high school, and that Acuna never called him regarding Meza.

Acuna testified he never called or spoke to anyone at Academy, nor did he have anyone call for him. He denied he interfered or attempted to interfere with Meza's contractual relations with Academy. Acuna did not deny speaking to Robert Valadez, his high school acquaintance.

Meza testified she did not know whether Acuna had called anyone at Academy.

Meza's relevant summary judgment proof included excerpts from her deposition, the deposition of Connie Bernal, and the affidavit of her brother-in-law, Rudy Garza.

Garza stated someone from Academy called him as a reference for Meza. The person did not identify himself other than to say he was from Academy. This person asked Garza if he had ever known Meza to steal. Garza was taken aback by this question. He called Academy and asked to speak to the person who checked employment references. Garza was referred to Robert Valadez. When Garza asked Valadez why he

2. Appellees assert on appeal that even if Acuna did interfere, Meza suffered no damages. Damages is an element separate and apart from proximate cause. In their motion for summary judgment, appellees did not assert Meza had no damages; the contention was that appellees did not *cause* her damage. Because lack of dam-

ages was not raised as a basis for summary judgment, we cannot consider it on appeal. *Ortiz v. Spann*, 671 S.W.2d 909, 914 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (motions for summary judgment "stand or fall on the grounds specifically set forth in the motion").

asked such an unprofessional question, Valadez stated that theft was a concern in the business. When Valadez asked Garza how he knew Meza, Garza told him he was Meza's brother-in-law. Valadez said, "No wonder."

■ Because a defendant accused of tortious interference rarely admits his guilt, a plaintiff must prove her cause of action with circumstantial evidence. Any ultimate fact may be proven by circumstantial evidence. *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 285 (Tex.1995). A fact issue is raised by circumstantial evidence if, from the evidence, a reasonable person would conclude that the existence of the fact is more reasonable than its nonexistence. *Guthrie v. Suiter,* 934 S.W.2d 820, 831–32 (Tex.App.— Houston [1st Dist.] 1996, no writ). All that is required is that the circumstances point to ultimate facts sought to be established with such a degree of certainty as to make the conclusion reasonably probable. *Smith v. Tennessee Life Ins. Co.,* 618 S.W.2d 829, 834 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). However, when circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred. *Litton Indus. Prod., Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984); *Marshall Field Stores, Inc. v. Gardiner,* 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.).

■ Meza argues Garza's affidavit is circumstantial evidence that Acuna called Robert Valadez, told him she was a thief, and told him not to hire her. However, the evidence equally supports the inference that it was important for the Valadezes to hire someone who was honest and would not steal from them. We do not find this to be proper circumstantial evidence. *Summers v. Fort Crockett Hotel, Ltd.,* 902 S.W.2d 20, 26 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (circumstantial evidence relied on by the plaintiff to infer causation equally supported the inference that son fell from the balcony for some other reason).

■ Bernal testified that on the Wednesday before her last day, Meza called in sick. Acuna was upset by this news. Bernal was present when Acuna spoke to Janie Ayala, Meza's supervisor, and told Ayala to tell Meza that she had better come back to work; that he and his father knew the Valadezes "really well;" and that he would make some calls if necessary. After Acuna concluded his conversation with Ayala, Bernal and Acuna discussed the situation further. Acuna again stated that "he and his father knew them very well" and "that, if he had to, he would call them and let them know she was a thief." Bernal stated she found Acuna's statements to Ayala to be so inappropriate that she contacted Leiker to report the incident.

Later in the week, Meza was in the office with Bernal and Acuna. Bernal asked Meza if she was getting ready to go to work on Monday. Bernal testified as follows:

A: Meza said no; that she had called that morning to verify that she was starting at 8:00 in the morning, and they had told her that she no longer had a job.

Q: Now, was Acuna present when this conversation took place?

A; Yes.

. . . . .

Q: Now, after Belinda told you that she no longer had a job, was there discussion between you and Acuna about that?

A: Well, I asked Acuna myself. I said, "You didn't go and talk to these people about her?"

And he told me, "No, I didn't. I'll have to go and talk to my father."

And then we never talked about it again until this suit came up.

Q: Now, whenever he said that he had to go talk to his father, what did he do at that time?

A: He left the store.

Q: And how long was he gone?

A: He was gone over an hour, maybe an hour-and-a-half.

We find this evidence susceptible to one inference: that Acuna, because he was upset with Meza's actions during the last several days, either called the Valadez family and told them he thought Meza was a thief or had his father call them. Viewing this circumstantial evidence in a light most favorable to

Meza, and indulging all inferences in her favor, we find that Bernal's testimony supports the allegation that an act of interference occurred within the required degree of certainty to make the conclusion reasonably probable. We therefore hold that the evidence creates a fact issue sufficient to preclude summary judgment.

We also find that the foregoing evidence negates appellees' contention that their conduct did not cause Meza's damages as a matter of law.[3] If a reasonable person could conclude Acuna knew the Valadezes, and that he called a member of the Valadez family concerning Meza, it is reasonably probable that appellees' conduct caused Meza's damages. *Smith*, 618 S.W.2d at 834.

We sustain Meza's point of error. The judgment of the trial court is REVERSED and the case REMANDED.

---

3. Appellees rely on Mrs. Valadez' affidavit in which she states she had not offered Meza employment, and that no one had called her regarding Meza. She also stated, however, that she did not know Meza had quit her job at Service Merchandise in order to work at Academy, and that had she known, she would have offered Meza a job.

We find this affidavit to be internally inconsistent. The affidavit does no more than create a fact question concerning whether Academy had a position available, an issue not before us in this appeal.