Opinion issued April 11, 2002






 









In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-01067-CV






TRICO MARINE SERVICES, INC.; TRICO MARINE ASSETS, INC.;
TRICO MARINE OPERATORS, INC.; TRICO MARINE
INTERNATIONAL, INC.; and TRICO SERVICOS MARITIMOS, LTDA, 
Appellants


V.


STEWART & STEVENSON TECHNICAL SERVICES, INC. and GE
PACKAGED POWER, INC., Appellees






On Appeal from the 189th District Court

Harris County, Texas

Trial Court Cause No. 2000-28760







* * *

____________


NO. 01-01-01239-CV






IN RE TRICO MARINE SERVICES, INC.; TRICO MARINE ASSETS,
INC.; TRICO MARINE OPERATORS, INC.; TRICO MARINE
INTERNATIONAL, INC.; and TRICO SERVICOS MARITIMOS, LTDA,
Relators






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N

 By interlocutory appeal and mandamus, appellants/relators (together, "Trico")
challenge an order granting a motion to compel arbitration. We dismiss the appeal
for want of jurisdiction and conditionally grant mandamus relief.

Background


 In October 1996, Trico bought turbine engines from appellee/real-party-in-interest Stewart & Stevenson Technical Services, Inc. ("S&S"). Trico sued S&S and
its successor GE Packaged Power, Inc. ("GE") when the engines allegedly failed.

 S&S and GE moved to compel arbitration, and Trico moved to stay arbitration. 
After a non-evidentiary hearing, the trial judge compelled arbitration after denying
Trico an evidentiary hearing. The trial judge did not file fact findings or legal
conclusions.

Interlocutory Appeal (Our Cause No. 01-01-01067-CV)


 S&S and GE have moved to dismiss Trico's interlocutory appeal.

 S&S and GE's arbitration motion referred to both the Texas General
Arbitration Act ("TAA") (1) and the Federal Arbitration Act ("FAA"), (2) and the trial
judge did not state which act applied. We hold the FAA controls. Trico's principle
places of business are in Louisiana and Brazil, while S&S's is in Texas. Trico alleged
the turbine engines were for an ocean-going vessel that would be chartered by
Brazil's national oil corporation to transport oilfield crews off the Brazilian coast. 
This contract therefore concerns both a "maritime transaction" and a "transaction
involving [foreign or interstate] commerce," either of which requires the FAA's
application. 9 U.S.C. § 2 (2001) (applying to arbitration provisions in these
transactions); see In re L&L Kempwood Assocs., L.P., 9 S.W.3d 125, 127 (Tex. 1999)
(parties' residing in different states supported conclusion that contract involved
interstate commerce so that FAA applied). Mandamus, not interlocutory appeal, lies
over an order compelling or denying arbitration under the FAA. (3) See In re Am.
Homestar, Inc., 50 S.W.3d 480, 483 (Tex. 2001) (order compelling arbitration under
FAA); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272-73 (Tex. 1992) (order
denying arbitration under FAA). Compare Tex. Civ. Prac. & Rem. Code Ann. §
171.098(a) (Vernon Supp. 2002) (allowing for interlocutory appeal only of orders
entered "under this chapter," i.e., the TAA); Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a) (Vernon 1997) (omitting arbitration orders as those for which interlocutory
appeal is allowed).

 Accordingly, we dismiss Trico's interlocutory appeal. We further deny S&S
and GE's motion for sanctions because (1) their own arbitration motion cited both the
TAA and FAA and (2) as mentioned above, the Texas Supreme Court opinion in Jack
B. Anglin Co. v. Tipps contained dictum suggesting that an appeal might lie. See id.,
842 S.W.2d at 271-72.

Mandamus (Our Cause No. 01-01-01239-CV)


 In issue one, Trico argues arbitration is improper because the contract did not
contain an arbitration clause. In issue two, Trico contends the trial judge erred in
denying an evidentiary hearing on whether a document containing an arbitration
clause was attached to the contract. We sustain both issues, although we do not grant
all of the relief Trico requests.

 2. Law of Arbitration and Standard of Review

 We review for clear abuse of discretion. Anglin, 842 S.W.2d at 271. A judge
abuses his discretion when he errs in determining what the law is or in applying the
law to the facts. In re Bruce Terminix Co., 988 S.W.2d 702, 703 (Tex. 1998).

 "A party cannot be required to arbitrate unless it has agreed to do so." Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205 (Tex. App.--Houston [1st Dist.] 1997,
orig. proceeding); see also Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a) (Vernon
Supp. 2002) (requiring judge to order arbitration upon agreement to arbitrate). The
parties' agreement to arbitrate must be clear. Porter & Clements, L.L.P. v. Stone, 935
S.W.2d 217, 220 (Tex. App.--Houston [1st Dist.] 1996, orig. proceeding). In this
determination, Texas contract law applies. See Belmont Constructors, Inc. v.
Lyondell Petrochemical Co., 896 S.W.2d 352, 357 (Tex. App.--Houston [1st Dist.]
1995, no writ) (consolidated original proceeding and appeal). Construction of an
unambiguous contract is a question of law. See MCI Telecommunications Corp. v.
Texas Utilities Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999). If the parties dispute the
arbitration agreement's existence, the judge must summarily hold an evidentiary
hearing on that issue. See Tex. Civ. Prac. & Rem. Code Ann. §§ 171.021(b),
171.023(b) (Vernon Supp. 2002); Anglin, 842 S.W.2d at 268-9. We apply the Texas
procedural statute on evidentiary hearings because Texas procedure controls even
though the FAA applies. See In re MHI Partnership, Ltd., 7 S.W.3d 918, 921 (Tex.
App.--Houston [1st Dist.] 1999, orig. proceeding).

 2. Incorporation by Reference

 The contract consisted of two documents: (1) an unsigned commercial proposal
for the engines dated October 14, 1996 ("the Proposal") and (2) a signed purchase
order confirmation dated October 15, 1996 ("the Confirmation"). (4) The parties'
dispute also involves a separate S&S document, entitled "General Terms &
Conditions of Sale" ("the GTCS paper"), which contained an arbitration clause. (5) 
S&S and GE asserted (1) the GTCS paper was physically included as a sixth and final
page of the Proposal, and thus of the contract, at the time of contracting and (2) even
if the GTCS paper was not physically attached, the contract--specifically, the
Proposal--incorporated the GTCS paper by reference.


 Trico denied that the GTCS paper was attached to the Proposal at the time of
contracting. Trico's evidence showed the Proposal had only five pages and no
attachments. This is important because arbitration was not mentioned in the
Confirmation or in the Proposal (if the Proposal had only five pages), but arbitration
was mentioned in the GTCS paper. Thus, there was a disputed material fact issue.

 To avoid an evidentiary hearing on what it conceded was a factual dispute
about the GTCS paper's attachment, S&S and GE stipulated (for that hearing only)
that the GTCS paper was not physically attached to the Proposal. Because the GTCS
paper was stipulated not to have been attached, arbitration was proper only if, as a
matter of law, the Proposal incorporated the GTCS paper by reference. The trial
judge agreed with S&S and GE that, as a matter of law, the Proposal incorporated the
GTCS paper by reference.

 And so we turn to the Proposal's terms. S&S and GE's incorporation-by-reference argument relied entirely on two references in the Proposal to "General
Terms and Conditions of Sale"--the same words that appeared at the top of the GTCS
paper. In the Proposal, the heading "VII. General Terms and Conditions of Sale"
appeared (1) in the table of contents and (2) at the bottom of page five. An inch of 
blank space appeared below page five's heading VII.


 "[A]n unsigned paper may be incorporated by reference into a paper signed by
the person sought to be charged. The language used is not important provided the
document signed by the defendant plainly refers to another writing." Owen v.
Hendricks, 433 S.W.2d 164, 166 (Tex. 1968). The absence of such a reference within
the signed document "shows that the parties did not intend to contract with reference
to the other instrument." Clutts v. S. Methodist Univ., 626 S.W.2d 334, 336 (Tex.
App.--Tyler 1981, writ ref'd n.r.e.). 

 We hold that the mere mention of "General Terms and Conditions of Sale" in
the Proposal's table of contents, and again as heading VII, does not plainly refer, as
a matter of law, to any separate document. An inch of blank space follows page
five's heading VII. It is not enough that the Proposal's heading VII and the external
document have the same title. Before heading VII can incorporate something by
reference, it must first make a reference. And that reference must be "plain." See
Owen, 433 S.W.2d at 166. Heading VII does not do that. Heading VII is, at best,
ambiguous--which means that any attempted reference it made was not "plain." See
Owen, 433 S.W.2d at 166.

 We distinguish the cases on which S&S and GE rely. In MTrust Corp. N.A. v.
LJH Corp., the contract expressly referred to an "Exhibit 'B' attached hereto and
incorporated herein by reference for all purposes," a much more specific reference
than here. 837 S.W.2d 250, 253-54 (Tex. App.--Fort Worth 1992, writ denied). The
court in Castroville Airport, Inc. v. City of Castroville held that an agreement plainly
referring to documents "attached [as] Exhibit A" and "attached as Exhibit B"
incorporated those exhibits by reference, even if the parties disputed whether the
exhibits were actually attached. 974 S.W.2d 207, 211-12 (Tex. App.--San Antonio
1998, no writ). The contracts in MTrust and Castroville clearly referred to an
external document. Here, in contrast, there is nothing more than a heading followed
by blank space.

 We also distinguish In re AGC Cotton Marketing, L.L.C., on which S&S and
GE rely. 985 S.W.2d 632 (Tex. App.--Amarillo 1999, orig. proceeding). That
contract had a category entitled "Rules," followed by the words "Texas Cotton
Association." Id. at 633. Assuming, for argument only, that "Rules: Texas Cotton
Association" was an agreement to incorporate the association's rules into the contract,
the court nonetheless held those particular rules did not require arbitration. Id. at 634. 
Even if this can be construed as a holding that the quoted language incorporated the
rules by reference, (6) our conclusion does not change. The heading "Rules," followed
by the name of an external and separate association, plainly refers to something
external. The heading "General Terms and Conditions of Sale," followed only by a
blank, does not--and certainly not plainly. And the words "General Terms and
Conditions of Sale" mean even less standing off by themselves in the Proposal's table
of contents.

 Nor do we agree with S&S and GE's claim that our interpretation leaves
heading VII meaningless. See Blaylock v. Am. Guarantee Bank Liab. Ins. Co., 632
S.W.2d 719, 722 (Tex. 1982) (holding contract must not be construed so as to render
some terms meaningless). That claim assumes that the topical heading "General
Terms and Conditions of Sale" is a contractual term, which we doubt. Cf. Tex.
Gov't Code Ann. § 311.024 (Vernon 1998) (statutory headings do not limit or
expand statute's meaning). For S&S and GE to win with this argument, they must
show that this blank space means that Trico intentionally relinquished a known
constitutional right--the right to a trial before a judge and jury. See Johnson v.
Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938) (defining waiver as the
intentional relinquishment or abandonment of a known right); College Savs. Bank v.
Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 682, 119 S. Ct.
2219, 2229 (1999) (courts indulge every reasonable presumption against waiver of
fundamental constitutional rights, here, trial by jury). Courts will not presume such
a waiver from a silent record. Carnley v. Cochran, 369 U.S. 506, 516, 82 S. Ct. 884,
889 (1962). That is simply more weight than blank paper can bear. Assuming that
"General Terms and Conditions of Sale" is really a contractual term and not merely
a topic heading in search of a topic, we would hold that term meaningless long before
we would hold that it waived a right as precious as a trial before a jury--or even
before a judge.

 3. Conclusion

 We hold the trial judge abused his discretion by implicitly holding that this
particular text constituted, as a matter of law, Trico's agreement to arbitrate. We thus
sustain this portion of issue one.

 4. Evidentiary Hearing

 Trico asked for the judge (1) to deny S&S and GE's motion to compel
arbitration and (2) to grant Trico's own motion to stay arbitration. Alternatively,
Trico requested an evidentiary hearing under Tex. Civ. Prac. & Rem. Code Ann. §§
171.021(b) and 171.023(b). We hold that an evidentiary hearing is required.

 Trico contended that, because of S&S and GE's one-time concession that the
GTCS paper was not attached, the trial judge should deny arbitration as a matter of
law since there was also no incorporation by reference. On appeal, Trico contend
that, even if the GTCS paper was attached, the GTCS paper still did not become part
of the Proposal because of the lack of "incorporation" language in the Proposal. This
latter argument was not presented to the trial judge, and even if it had been, the
circumstances would not justify a holding by us that, as a matter of law, arbitration
should be stayed.

 S&S and GE did not argue below that the GTCS paper was attached to the
Proposal as an exhibit, but that the GTCS paper actually constituted page six of the
Proposal, i.e., that the text for page five's heading VII ("General Terms and
Conditions of Sale") was found on page six, which was the GTCS paper. As stated,
Trico denied that and presented controverting evidence on that material fact. That
dispute required an evidentiary hearing. See Tex. Civ. Prac. & Rem. Code Ann. §§
171.021(b), 171.023(b); Anglin, 842 S.W.2d at 268-69.

 Nor would a stay of arbitration be supported by Milam Development Corp. v.
7*7*0*1 Wurzbach Tower Council of Co-Owners, Inc., 789 S.W.2d 942 (Tex.
App.--San Antonio 1990, writ denied). There, the court held that unsigned
documents containing lists, stapled to a lease that did not mention or refer to the
unsigned documents, were not part of the lease. Id. at 945. This case is different. If
the trial judge were to find, after an evidentiary hearing, that the GTCS paper was
physically included as page six, he could then reasonably find that page was a part of
the agreement because it was mentioned by name, "General Terms and Conditions of
Sale," on page five. The GTCS paper would then not be totally separate, like the
document in Milam Development. We find Cavazos v. Cavazos, 941 S.W.2d 211
(Tex. App.--Corpus Christi 1996, writ denied), similarly distinguishable. See id. at
213, 214-15 (holding an unattached "Schedule Five," located among court's papers,
was not part of divorce agreement because the agreement expressly referred to and
incorporated only four schedules, but did not mention a fifth).

 We sustain issue two. We overrule that portion of issue one requesting we
issue the writ to stay arbitration.

 Accordingly, we conditionally grant the writ and direct the trial judge (1) to
vacate his order compelling arbitration and (2) to conduct an evidentiary hearing to
determine the disputed facts relevant to the issues permitted under sections
171.021(b) and 171.023(b). We are confident the trial judge will comply with this
order. Therefore, we need not issue the writ at this time.




 Murry B. Cohen

 Justice



Panel consists of Justices Cohen, Wilson, and Nuchia.


Publish. Tex. R. App. P. 47.
1. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon Supp. 2002).
2. 9 U.S.C. §§ 1-16 (2001).
3. We thus need not reach the issue, briefed by the parties, of whether the TAA
allows interlocutory appeal of orders granting an application to compel
arbitration. Compare Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 271-72
(Tex. 1992) (stating in dictum that the FAA and TAA "permit . . . appeal from
an interlocutory order granting or denying a request to compel arbitration")
with Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1), (2) (Vernon Supp.
2002) (allowing interlocutory appeal of orders, among others, denying an
application to compel arbitration or granting an application to stay arbitration);
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a) (Vernon Supp. 2002)
(omitting orders granting application to compel arbitration among orders
appealable interlocutorily); Glazer's Wholesale Distribs., Inc. v. Heineken
USA, Inc., No. 05-99-01685-CV, slip op. at 8 (Tex. App.--Dallas June 29,
2001, rule 53.7(f) motion filed) (consolidated orig. proceeding and
interlocutory appeal; designated for publication) (declining to follow this
dictum in Anglin); In re Godt, 28 S.W.3d 732, 738 (Tex. App.--Corpus Christi
2000, orig. proceeding) (noting no interlocutory appeal lies over orders
compelling arbitration entered under the TAA); Materials Evolution Dev. USA,
Inc. v. Jablonowski, 949 S.W.2d 31, 33 (Tex. App.--San Antonio 1997, no
writ); Lipshy Motorcars, Inc. v. Sovereign Assocs., Inc., 944 S.W.2d 68, 69-70
(Tex. App.--Dallas 1997, no writ) (declining to follow this dictum in Anglin);
Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing & Remodeling Co.,
940 S.W.2d 150, 153-54 (Tex. App.--San Antonio 1996, no writ) (same); and
Gathe v. Cigna Healthplan of Texas, Inc., 879 S.W.2d 360, 362 (Tex.
App.--Houston [14th Dist.] 1994, writ denied) (same).
4. Trico contends the unsigned Proposal was not sufficiently incorporated into the
signed Confirmation for the two documents to constitute one contract. Its
argument below, however, focused on the incorporation of a third document
into the Proposal, not the Proposal's incorporation into the Confirmation. 
Additionally, neither Trico's motion opposing arbitration, nor the affidavits
supporting that motion, argued that the contract did not consist of two
documents, and the affidavits strongly imply the opposite. Therefore, for
purposes of this opinion, we consider it undisputed that the Proposal and the
Confirmation together constituted one contract. Consequently, it does not
matter that the Proposal was unsigned; the Confirmation that incorporated the
Proposal was signed, and the trial judge could have reasonably concluded that
the two documents were legally one. Cf. Milam Dev. Corp. v. 7*7*0*1
Wurzbach Tower Council of Co-Owners, Inc., 789 S.W.2d 942, 945 (Tex.
App.--San Antonio 1990, writ denied) (because sub-lease between plaintiff
and defendant incorporated by reference a lease between plaintiff and a third-party, court looked to the terms of the plaintiff/third-party lease in plaintiff's
suit for defendant's breach of the sub-lease).
5. We must presume for this opinion, based on S&S's and GE's concessions
made in the trial court and discussed below, that the GTCS paper was a
separate document from the contract.
6. Despite the "argument only" qualification noted above, later, possibly
contradictory language suggests the court may have believed the language
actually sufficed for incorporation, see id. at 634-35.