Appellant's Motion for Rehearing Overruled; Opinion of April 17, 2003,
Withdrawn; Affirmed and Majority and Concurring Opinion
















Appellant's Motion
for Rehearing Overruled; Opinion of April 17, 2003, Withdrawn; Affirmed and Majority and Concurring Opinions on Rehearing
filed September 11,
 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-01505-CV

____________

 

AVI BART MARKOWITZ, Appellant

 

V.

 

BRIDGET MARY MARKOWITZ, Appellee

 

 

 

On Appeal from
the 272nd District Court

Brazos County, Texas

Trial Court
Cause No. 35,930A-272

 

 

 

M A J O R I T Y   O P I N I O
N   O N  
R E H E A R I N G

            We withdraw our previous opinion
dated April 17, 2003 and
substitute this opinion in its place.  In
six issues, Avi Bart Markowitz
appeals the final decree of divorce that dissolved his marriage to Bridget Mary
Markowitz and divided their property.  We will affirm.  Accordingly, Avi’s
motion for rehearing is overruled.




Background

            Avi and
Bridget Markowitz married in 1983.  Avi filed for
divorce in 1997 and on December
 15, 1997, he presented an agreed decree of divorce to Bridget
for her signature.  Bridget was scheduled
for breast cancer surgery the next day. 
Despite the impending hospital stay, she signed the decree but initialed
it “AMW.”  Later, she testified that the
acronym meant “against my will.”  On December 18, 1997, while
Bridget was hospitalized, the court rendered judgment on the parties’ agreement
and signed the final decree of divorce. 
Late that afternoon, Bridget called the trial court from her hospital
room, claiming (with her husband’s attorney also on the line) that she had been
coerced into signing the decree.  She
subsequently retained an attorney and filed a motion for new trial.

            Following the grant of a new trial,
the trial court entered temporary orders, providing in part for spousal support
and a continued salary for Bridget, who had worked as a nurse in Avi’s medical practice. 
Avi did not comply with the temporary orders
timely or willingly.  Additionally, as
the divorce became more contentious, the trial court found Avi
in contempt on three occasions and jailed him twice for failure to comply with
the temporary orders.  During the course
of proceedings, Avi filed three writs of habeas
corpus, two or three motions to recuse the judge, and
two petitions for writ of mandamus. 
There were many other pretrial motions, some involving Bridget’s own
poor behavior.  The jury trial spanned
seven weeks during October and November 1999. 
Post-verdict motions and hearings continued in the same vein of
non-cooperation and contentiousness between Avi and
Bridget.  In total, Avi
spent more than $300,000 in attorney’s fees, and Bridget’s attorney dedicated
some $70,000 worth of time to the case. 
The trial court signed a final judgment on September 20, 2000, and this appeal ensued.

                                                       Reporter’s Record

            In his first issue, Avi contends that he is entitled to a new trial because the
court reporter failed to transcribe and file certain pretrial proceedings,
which were recorded electronically.  Avi claims that the missing pretrial proceedings would
demonstrate he was denied a fair and impartial trial on the merits because of
the trial judge’s bias.  For the 

 class=Section2>

reasons
set forth in Justice Fowler’s opinion, which is the majority opinion on this
issue, the court overrules issue one.

                                                    Alleged Judicial Bias

            In his second issue, Avi contends he was denied a fair and impartial trial
because of judicial bias throughout the proceedings.  In seventeen pages of his brief, he complains
that three years of rulings, as well as comments made by the trial court and
Bridget, evidence the trial court’s bias against him.  

            Parties have a right to a fair and
impartial trial.  Metzger v. Sebek, 892 S.W.2d 20, 37 (Tex.
App.—Houston [1st Dist.] 1994, writ denied). 
One of the fundamental components of a fair trial is a neutral and
detached judge.  Ward v. Village of Monroeville, 409 U.S. 57, 62
(1972).  A judge should not act as an
advocate nor an adversary for any party. 
Metzger, 892 S.W.2d at
38.  “To reverse a judgment on the ground
of improper conduct or comments of the judge, we must find (1) that judicial
impropriety was in fact committed and (2) probable prejudice to the complaining
party.”  Id. at 39.

            In Barrientos v. Nava, 94 S.W.2d 270 (Tex. App.—Houston [14th
Dist.] 2002, no pet.), this court considered judicial bias when a trustee was
appointed.  We wrote as follows:

The scope of our review is the entire record.  Id. We note that “‘judicial
remarks during the course of a trial that are critical or disapproving of, or
even hostile to, counsel, the parties, or their cases, ordinarily do not
support a bias or partiality challenge.’”
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001) (citing Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed.2d 474
(1994)).  Such remarks may constitute
bias if they reveal an opinion deriving from an extrajudicial source; however,
when no extrajudicial source is alleged, such remarks will constitute bias only
if they reveal such a high degree of favoritism or antagonism as to make fair
judgment impossible.  See Ludlow v. DeBerry,
959 S.W.2d 265, 271 (Tex. App.—Houston [14th Dist.] 1997, no writ) (citing Liteky, 510 U.S. at 554-56, 114 S. Ct. 1147).

 

Barrientos v. Nava, 94 S.W.3d at 291-92.  In Barrientos, the court concluded that the judge clearly held
strong opinions about the proposed trustee, but they were based on the testimony
and evidence the judge heard and saw during the trial.  As such, they were not grounds for improper
bias.  With this case law in mind, we now
turn to Avi’s complaints of judicial bias.

            First, we consider the trial court’s
allegedly biased comments.  The record
reflects various occasions on which the trial court expressed consternation
about appellant’s conduct.  A party must
object to a court’s improper comment when it occurs in order to preserve error
for appellate review.  Dow Chem. Co., 46 S.W.3d at 241.  Avi did not object
to any of the judge’s comments during the proceedings in which they were made.[1]  Therefore, no error is preserved for our
review regarding the trial court’s allegedly improper courtroom comments.  

            Next, we consider the allegedly
extrajudicial comment reported in a local newspaper article:  “Upon sending Markowitz
to jail last week, [Judge] Delaney said he was protecting the weak from the
strong . . . . [Judge] Delaney declined to comment Wednesday . . . .”  Avi claims the
judge’s reported comment is an extrajudicial opinion reflecting the judge’s
bias.  Again, this is taken from evidence
introduced during a hearing to enforce temporary orders, a transcript not made part of the appellate
record.  We may not consider matters not
included in the appellate record. 
Therefore, no error is preserved for our review regarding this allegedly
extrajudicial comment.

            Last, we consider Avi’s claim that the trial court’s rulings establish
judicial bias against Avi such that he was denied a
fair and impartial trial.  Only in the
rarest circumstances are judicial rulings demonstrative of the degree of
favoritism or antagonism required to show that a fair and impartial trial is
impossible.  Liteky, 510 U.S. at 555; see In re
M.C.M., 57 S.W.3d 27, 33 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)
(insufficient showing of antagonism in, for example, judge’s refusal to permit
attorney to read from documents in evidence). 
Such rulings are generally best brought as grounds for appeal, not as
evidence of judicial bias.  See Liteky,
510 U.S. at 555; Grider v. Boston Co., 773 S.W.2d 338, 346
(Tex. App.—Dallas 1989, writ denied) (“proper remedy was to assign error on the
basis of the adverse rulings”).

            Avi
suggests some thirty different rulings reflect the trial court’s antagonism
toward him.  An objecting party, in order
to preserve a complaint for appellate review, must get a ruling from the trial
court.  Tex.
R. App. P. 33.1; see Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103, 112
(Tex. App.—Houston [14th Dist.] 2000, no pet.). 
We have examined the trial record, and in many of Avi’s
examples of biased rulings, the record contains no ruling or request for a
ruling.  In several other instances,
objections to testimony were resolved in Avi’s
favor.  These favorable rulings would
indicate that the trial judge was attempting to rule on the merits
notwithstanding the antagonistic atmosphere between parties and the court.  Finally, after carefully examining the clerk’s
record and trial record for the remaining examples of allegedly biased rulings,
we conclude that the trial judge did not exhibit deep-seated favoritism or
antagonism that would make fair judgment impossible.  See Dow
Chem. Co., 46 S.W.3d at 241.  Even
considering the cumulative effect of all of the judge’s comments and rulings,
we cannot conclude that they probably caused the rendition of an improper
judgment by either influencing the jury to return a verdict it would not have
otherwise returned.  Nor has it been
shown that they impacted the judge’s post-verdict rulings.  See
Metzger, 892 S.W.2d at 39. 

            Accordingly, we overrule issue two.




                                                      Breach of Contract

            In his third issue, Avi contends that the trial court erred in granting
judgment non obstante veredicto (JNOV) on the jury’s finding
(Issue No. 11) that Bridget failed to comply with her contractual obligations
under the Final Decree of Divorce dated December 18, 1997.  He further contends the trial court was
obligated to incorporate into the final judgment an award of $115,530 found to
be his damages resulting from Bridget’s breach of contract.  Our disposition of this issue turns on the
status of the agreement (recited in the 1997 decree) after the trial court
granted a new trial.  

            Here, our discussion is controlled
by one fact: the trial court granted a motion for new trial.  While a trial court retains plenary power, it
has the authority to grant a new trial after rendition of an agreed
divorce.  See Nichols v. Nichols, 907 S.W.2d 6, 9–10 (Tex. App.—Tyler 1995,
writ denied).  When a motion for new
trial is granted, the original judgment is set aside and the parties may
proceed without prejudice from previous proceedings.  See In
re Marriage of Wilburn, 18 S.W.3d 837, 844 (Tex. App.—Tyler 2000, pet.
denied); Long John Silver’s Inc. v. Martinez,
850 S.W.2d 773, 777 (Tex. App.—San Antonio 1993, writ dism’d
w.o.j.). 
Granting a new trial has the legal effect of vacating the original
judgment and returning the case to the trial docket as though there had been no
previous trial or hearing.  See Pinkley v.
Vega, 768 S.W.2d 473, 475 (Tex. App.—El Paso 1989, no writ) (finding that
an order granting new trial vacates former judgment in its entirety); see also Schintz
v. Morris, 35 S.W. 516, 519 (Tex. Civ.
App.—Austin 1896, orig. proceeding) (noting that a trial court’s decision to
grant a motion for new trial, thereby setting aside the only judgment that was
rendered on the verdict, had “the effect of destroying the life of the verdict
for all purposes.”).[2] 

            Avi
contends the trial court’s decision to grant a new trial did not alter the
parties’ contractual division of assets and liabilities.  Avi relies on the
Texas Supreme Court’s acknowledgment that “[a]n agreed judgment should be
construed in the same manner as a contract.” 
Gulf Ins. Co. v. Burns Motors,
Inc., 22 S.W.3d 417, 422 (Tex. 2000); accord McGoodwin
v. McGoodwin, 671 S.W.2d 880, 882 (Tex. 1984); Cavazos v. Cavazos, 941 S.W.2d 211, 214
(Tex. App.—Corpus Christi 1996, writ denied). 
He also argues that an agreed judgment may stand as a contract even if
it falls as an adjudication.  Mackey v. Mackey, 721 S.W.2d 575, 579
(Tex. App.—Corpus Christi 1986, no writ); accord
Reagan County Purchasing Co. v. State,
65 S.W.2d 353, 358 (Tex. Civ. App.—Austin 1933, no
writ).  However, under section 7.006 of
the Family Code, the trial court in a divorce proceeding has discretion to
approve or reject such agreements in order to ensure a just and right division
of the marital estate.  Section 7.006
provides:

(a)  To promote amicable
settlement of disputes in a suit for divorce or annulment, the spouses may
enter into a written agreement concerning the division of the property and the
liabilities of the spouses and maintenance of either spouse.  The agreement may be revised or repudiated
before rendition of the divorce or annulment unless the agreement is binding
under another rule of law.

 

(b)  If the court finds that the
terms of the written agreement in a divorce or annulment are just and right,
those terms are binding on the court.  If
the court approves the agreement, the court may set forth the agreement in full
or incorporate the agreement by reference in the final decree.

 

(c)  If the court finds that the
terms of the written agreement in a divorce or annulment are not just and
right, the court may request the spouses to submit a revised agreement or may
set the case for a contested hearing.

 

Tex. Fam. Code Ann. § 7.006 (Vernon 1998).

            The Texas Legislature has mandated
the trial court’s exercise of special responsibilities regarding the division
of assets and liabilities upon dissolution of the matrimonial bond.  Texas law
requires a finding by the trial court that the terms of a written agreement for
the division of assets and liabilities are just and right.  Id. §
7.006(b).  By vacating the original judgment,
the trial court clearly withdrew its approval of the terms in the
agreement.  Additionally, in its Findings
of Fact and Conclusions of Law, the trial court concluded that the terms of the
agreement were not just and right.  Thus,
without approval from the trial court, there was no longer a written agreement
capable of being enforced.[3] 

            In considering whether the agreement
in this case is “binding under another rule of law,” we are mindful of the line
of cases establishing the enforceability of a Rule 11 agreement before or after
rendition of a final decree.  See Tex.
R. Civ. P. 11 (in writing, signed by the
parties, and filed with the papers as part of the record).  However, we believe any cases on this issue
that are outside of the family law context do not control.  

            A Rule 11 agreement is a contract,
governed by contract law.  In re Marriage of Nolder,
48 S.W.3d 432, 434 (Tex. App.—Texarkana 2001, no pet.); see Padilla v. LaFrance, 907 S.W.2d 454,
461 (Tex.
1995).  We acknowledge that agreements incident
to divorce become enforceable contracts when they are incorporated into a final
decree.  Traylor v. Traylor, 789 S.W.2d 701, 703 (Tex. App.—Texarkana 1990,
no writ).  We further acknowledge that
agreements under Alternative Dispute Resolution Procedures are enforceable in
the same manner as any other written contract. 
See Tex. Civ. Prac.
& Rem. Code Ann. § 154.071(a) (Vernon
1997).  However, we do not believe our
application of section 7.006 of the Family Code in the instant case conflicts
with these settled principles.  See In
re Ames, 860 S.W.2d 590, 592 (Tex. App.—Amarillo 1993, no writ) (finding no
conflict between section 154.071 and Family Code section 3.631(a) (the
predecessor to section 7.006)).  Our
decision properly ensures that the trial court will retain statutory authority
to determine a just and right division of the marital estate as required by
section 7.006.  After a new trial is
granted, the court should have an opportunity to either accept or reject the
agreement.  See Keim v. Anderson, 943 S.W.2d 938, 946 (Tex.
App.—El Paso 1997, no writ) (acknowledging that the trial court should have an
opportunity to set aside an agreement after rendition of a judgment in order to
consider an intervention). 

            Accordingly, we hold that any contractual
obligation arising from the decree was extinguished when the trial court
concluded that it was not “just and right.” 
Avi’s third issue is overruled.

 

 class=Section3>

Fraud on the Community

            In his fourth issue, Avi contends the trial court erred in failing to award him
a share of community assets lost through Bridget’s fraud.  The jury found that Bridget committed fraud
on the community in the amount of $67,800. 
The trial court held that the jury’s answer was advisory and that
wrongful disposition of community assets is merely a factor to be considered in
the property division.  “Because a
wronged spouse has an adequate remedy for fraud on the community through the
‘just and right’ property division upon divorce, . . . there is no independent
tort cause of action between spouses for damages to the community estate.”  Schlueter v. Schlueter, 975 S.W.2d 584, 585 (Tex. 1998).  “Texas recognizes the concept of fraud on the
community, which is a wrong by one spouse that the court may consider in its division of the estate of the parties and that may justify an unequal division of the
property.”  Id. at 588 (emphasis added).

            A trial court has wide discretion in
dividing the community estate.  Wright v. Wright, 65 S.W.3d 715, 716
(Tex. App.—Eastland 2001, no pet.).  It
may consider fault in the divorce, the spouses’ capacities and abilities,
benefits that a party not at fault would have derived from continuation of the
marriage, business opportunities, education, physical condition of the parties,
age disparity, business opportunities, education, size of separate estates, the
nature of the property, and waste of community assets.  Schlueter, 975 S.W.2d at 589; see Wright, 65 S.W.3d at 717. 
On appeal, we presume that the trial court properly exercised its
discretion, and we may not disturb the property division absent a clear abuse
of discretion.  Wright, 65 S.W.3d at 717.  

            The record reflects that the trial
court considered Bridget’s earning capacity, income, educational level, and the
benefits she would have received had the marriage continued.  The trial court also considered Avi’s excessive personal expenditures during the pendency of the divorce and his refusal to abide by
temporary orders (which resulted in protracted enforcement litigation) as
actions that reduced the community assets available for division.  Lastly, the trial court considered the jury’s
award of two dollars for Bridget’s intentional infliction of emotional
distress, the finding that Bridget fraudulently transferred assets, and the
finding that neither party had unfairly expended community property without the
other’s knowledge or consent.  In total,
the record does not reflect abuse of discretion in the division of the
community estate.  Therefore, we overrule
issue four.

                                                                   Valuation

            In his fifth issue, Avi contends that the trial court should have granted JNOV
on the jury’s valuation of his medical practice because there is no evidence
that it was worth $321,000.  As a subissue, he also argues that the trial court erred in
allowing Bridget to testify about the value of the medical practice because she
was not designated to testify on that subject.

            A no-evidence point may only be
sustained when the record discloses one of the following: (1) a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
or (3) the evidence establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez, 977
S.W.2d 328, 334 (Tex. 1998).  In determining a no-evidence issue, we
consider only the evidence and inferences that tend to support the finding and
disregard all evidence and inferences to the contrary.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994).  If there is more than a scintilla
of evidence to support the finding, the claim is sufficient as a matter of
law.  Browning-Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993).

            At trial, a certified public
accountant testified that the value of the medical practice was $221,000, not
including attorney’s fees paid by Avi from medical
practice accounts.  Additionally, the
evidence showed that Avi paid his attorneys over
$100,000 from the medical practice for the divorce.  The medical practice’s usual accountant
testified that such attorney’s fees are not business-related deductions.  Further, the evidence showed that this
accountant labeled such non-business deductions as “due from shareholder.”  Given these two amounts, the $221,000
valuation plus in excess of $100,000 in attorney’s fees due the medical
practice from Avi, there is more than a scintilla of
evidence to support the jury’s valuation of $321,000 for the medical
practice.  See Rathmell v. Morrison, 732 S.W. 2d 6, 19 (Tex.
App.—Houston [14th Dist.] 1987, no writ). 

            Having found sufficient evidence to
support the jury’s valuation of the medical practice, we need not address
whether it was error to allow Bridget to testify about the value.  We overrule issue five.

                                                            Attorney’s Fees

            In his sixth issue, Avi contends that the trial court should have granted JNOV
because there is no evidence to support the jury’s award of zero in attorney’s
fees for Avi’s successful appeals to the court of
appeals and the Texas Supreme Court.  He
asks us to render judgment of $50,000 for a successful appeal in this court and
$20,000 in the event of a successful appeal before the Texas Supreme Court.

            However, determination of this issue
has no effect on the judgment.  “A party
has no statutory right to attorney’s fees in a divorce case which does not
involve a child custody determination.”  Beard v. Beard, 49 S.W.3d 40, 64 (Tex.
App.—Waco 2001, pet. denied).  A trial
court may award attorney’s fees as a
part of the division of the parties’ marital estate.  Pletcher v. Goetz,
9 S.W.3d 442, 448 (Tex. App.—Fort Worth 1999, pet. denied).  In this case, the trial court specifically
ordered in the final judgment that both sides should bear their own attorney’s
fees.  Avi does
not assign error to this portion of the judgment.  Thus, it is a moot question whether the trial
court should have granted JNOV on the jury’s valuation of appellate attorney’s
fees.  We are constrained to address
issues in which an actual controversy exists. 
See Speer v. Presbyterian
Children’s Home & Serv. Agency, 847 S.W.2d
227, 228 (Tex.
1993).  Further, under the rules of
appellate procedure, no judgment may be reversed on the ground that the trial
court committed an error of law unless the error probably caused rendition of
an improper judgment.  Tex. R. App. P. 44.1(a).  Accordingly, we do not address Avi’s sixth issue.

 








                                                                 Conclusion

            We have overruled issues one through
five, and issue six is rendered moot. 
Accordingly, the judgment of the trial court is affirmed.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Opinion on Rehearing filed September 11,
 2003.

 

Panel
consists of Justices Yates, Fowler, and Seymore.  (Seymore and Fowler, J.J. concurring.)

 

 











            [1]  The appellate record does not include
transcripts of the pretrial proceedings, particularly the hearings on motions
to recuse, and we cannot consider exhibits to Avi’s brief as part of the appellate record.  See
Till v. Thomas, 10 S.W.3d 730, 733–34 (Tex. App.—Houston [1st Dist.] 1999,
no pet.). 





            [2]  This principle is deeply rooted in Texas law.  See
City of San Antonio v. Dickman, 34 Tex. 647, 651
(1870) (“It is believed to be a well-settled principle, that the granting a new
trial in a cause is to reinstate it on the docket as though no trial had been
had . . . .”); Wolf v. Sahm, 135 S.W. 733, 734 (Tex. Civ.
App. 1911) (“It is needless to remark that the effect of granting a new trial
is to vacate the judgment rendered on the prior one.”).





            [3]  We acknowledge that the following language is
included in subsection (a): “the agreement may be revised or repudiated before
rendition . . . unless the agreement is
binding under another rule of law.” 
This language might imply that the trial court is bound by the agreement
after rendition; however, we do not believe the legislature intended to impede
the trial court from placing the parties and the court in status quo ante by granting a new trial.  This interpretation ensures that the trial
court will retain statutory authority to determine a just and right division of
the marital estate when a new trial is granted. 
Accordingly, litigants may either draft another agreement or proceed to
trial.  Here, the trial court observed in
its Findings of Fact and Conclusions of Law that any contractual obligations
arising from the decree were extinguished when the new trial was granted.