MILAM DEVELOPMENT
CORPORATION,
Appellant,

v.

7*7*0*1  WURZBACH TOWER
COUNCIL OF CO–OWNERS,
INC., Appellee.

No. 04–87–00575–CV.

Court of Appeals of Texas,
San Antonio.

March 28, 1990.

Rehearing Denied May 24, 1990.

Jerry N. Dennard, San Antonio, for appellant.

Mitchell L. Weidenbach, Charles Estee, Shannon & Weidenbach, San Antonio, for appellee.

Before CADENA, C.J., and REEVES and CHAPA, JJ.

## OPINION

CADENA, Chief Justice.

Plaintiff, Milam Development Corporation, sued 7*7*0*1 Wurzbach Tower Council of Co–Owners, Inc. (Council), a condominium association formerly known as Milam Towers South Council of Co–Owners, Inc., for breach of a sub-lease agreement

involving television satellite equipment. Plaintiff alleged that Council violated the sub-lease by failing to return certain property when the sub-lease was terminated. The property in question is the coaxial cable installed in the condominiums during construction and a new satellite system purchased and installed after the original equipment was removed. Council filed a counterclaim based on alleged violations of the Texas Deceptive Trade Practices Act (DTPA). A jury returned a verdict favorable to Milam on its claim against Council and returned an unfavorable verdict to Council on its DTPA claim. The trial court entered a judgment non obstante veredicto that Milam take nothing and awarded Council its costs and attorney's fees. We affirm this judgment.

Plaintiff was the developer of a condominium structure in San Antonio. In February, 1982, while the project was under construction, plaintiff contracted with Corpus Christi Systems, Inc., to install a television satellite system in the building. The system consisted of three parts: the satellite receiving equipment, or dish; MATV Head End, which amplifies the signal and converts it to television channel designations; and a distribution system consisting of a coaxial cable, junction boxes and outlets in each condominium unit. The system was installed and construction of the project was completed in September, 1982.

In October, 1982, plaintiff sold the satellite system to Chase Investment Company (Chase) which in turn leased it back to plaintiff. In March, 1983, S.A.T. Investments assumed ownership and possession of the condominium project.

On March 4, 1983, after S.A.T. had taken title to the condominium project, defendant sub-leased from plaintiff the satellite equipment covered in the lease from Chase to plaintiff. With minor irrelevant exceptions, the sub-lease incorporated the Chase-plaintiff lease in its entirety, and also provided that defendant could terminate the sub-lease by giving 60 days written notice to plaintiff.

In 1984 defendant replaced the satellite dish and MATV Head End with new equipment which was connected to the coaxial cable that had originally been installed during construction of the building. Council claimed that this replacement was necessary because of the continual reception problems resulting from use of the original dish and MATV Head End. Plaintiff insisted that during the latter part of 1983 defendant's actions resulted in extensive water damage to the system during the renovation of the condominium project after its transfer to S.A.T. Plaintiff also claimed that the problems resulted from the fact that defendant, contrary to the provisions of the sub-lease, moved the dish from its original location on a concrete pad on the ground to the top of a new parking garage built next to the condominium building.

On October 17, 1984, Council gave plaintiff written notice that it was terminating the sub-lease in 60 days because the original equipment did not perform satisfactorily. Several offers by Council to return the original dish and MATV Head End were rejected by plaintiff, who claimed that the newly installed equipment was an "addition or improvement" to the system which, under the terms of the sub-lease, belonged to plaintiff. Plaintiff also claimed that the coaxial cable which had been installed in the building was part of the leased equipment and demanded delivery of the cable and the newly-installed equipment. Council denied plaintiff's demands.

The jury found that the coaxial cable was part of the equipment subject to the lease and that Council failed to deliver to plaintiff all improvements and additions made to the system. The verdict contained findings as to the value of the cable and such additions and improvements.

■ We must uphold the judgment non obstante veredicto unless after viewing the evidence in the light most favorable to the verdict, we determine that there is more than a scintilla of evidence which supports the jury's findings. *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 649–50 (Tex.1977).

■ Plaintiff is mistaken in its assertion that the coaxial cable originally installed in the condominium building is part of the equipment sub-leased to Council. Since the sub-lease incorporates the lease from Chase to plaintiff, we agree with plaintiff that we must construe the original lease which consists of two pages of the lease proper and an attached document entitled "Exhibit A," that contains a list of the equipment leased. The list of "Equipment Leased" which is found in Exhibit A does not include the coaxial cable. Since it is undisputed that Exhibit A is a part of the original lease which is incorporated in the sub-lease, we must conclude that it is a part of the sub-lease from plaintiff to Council. The original lease and sub-lease, therefore, establish that the coaxial cable is not a part of the leased equipment.

■ Plaintiff contends that four documents which were stapled to the original lease at the time it was executed must be considered a part of that instrument and a part of the sub-lease. Kenneth Milam, plaintiff's president, testified that these documents were part of the original lease with Chase. One of the documents contains an "EQUIPMENT LIST" and a list of "Local Origination Equipment" on the stationary of Corpus Christi Systems, the company which originally installed the system in the building. The equipment listed in the "EQUIPMENT LIST" found in this document is identical to that listed in Exhibit A, except that it includes an "equipment rack." The list of "Local Origination Equipment" includes the coaxial cable.

Plaintiff contends that the lease is ambiguous because the "Local Origination Equipment" list includes the coaxial cable, while Exhibit A does not. Because of this alleged ambiguity, plaintiff argues that the testimony of its president concerning the equipment which was included in the lease was properly admitted.

■ Unlike Exhibit A, which is referred to in the body of the lease and is initialled by the parties, the document with the "EQUIPMENT LIST" AND "Local Origination Equipment" is not signed, referred to in the lease, or mentioned as an exhibit to the lease. Since such a document cannot be considered a part of the lease, plaintiff cannot rely on it for the purpose of creating the ambiguity necessary to permit the admission of parol testimony to explain such ambiguity. We also reject plaintiff's contention which relies on the rule that separate instruments executed at the same time and for the same purpose in the course of the same transaction, should be considered together and construed as one contract. *See Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981). It is true, as plaintiff points out, that the rule applies even when the documents do not refer to each other and were not executed at the same time. *U.S. Life Title Co. of Dallas v. Andreen*, 644 S.W.2d 185, 189–190 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). However, the rule has no application here. In order for a document to be considered as part of a signed contract, it is necessary that it be signed or referred to in the signed contract. *Owen v. Hendricks*, 433 S.W.2d 164, 166–67 (Tex. 1968); *Clutts v. Southern Methodist Univ.*, 626 S.W.2d 334, 336 (Tex.App.—Tyler 1981, writ ref'd n.r.e.). The mere stapling of an unsigned document to a contract which contains no mention of such document is not sufficient to incorporate that document into the contract.

The lease itself unambiguously expresses that the equipment covered by it is described in Exhibit A. It declares that Chase leases to plaintiff "all machinery, equipment and other property more particularly described in the schedule attached as Exhibit 'A' which is executed by the parties concurrently herewith and made a part hereof for all purposes."

The trial court correctly concluded that the coaxial cable was not included in the sub-lease.

■ Plaintiff's claim to the new equipment connected to the coaxial cable by Council is based on a provision that "[a]ll

additions and improvements ... made to the equipment shall belong to and become the property of the Lessor upon the termination of this Lease."

If, as we have held, the cable was not a part of the equipment, the new equipment which was connected to it could not be "additions ... made to the equipment...." For the same reason, the new equipment could not be considered "improvements" to the equipment. The new satellite dish and MATV Head End constituted replacement of the equipment and not improvements to it. The sub-lease does not contemplate that replacement equipment is to become the property of plaintiff upon termination of the sub-lease.

Plaintiff's argument that there was an issue of fact concerning damages is irrelevant. Since we have held that Council did not breach the agreement, there is no theory which would support an award of damages to plaintiff. For the same reason we must reject plaintiff's complaint of the court's refusal to award it attorney's fees. Since absent a breach by Council, plaintiff was not entitled to recover and there is no basis for an award of attorney's fees to plaintiff. *Jay–Lor Textiles, Inc. v. Pacific Compress Warehouse Co.*, 547 S.W.2d 738, 743 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

Council raises five cross-points, but we need not consider the first four since they are urged only in the event we have reversed the action of the trial court in granting judgment non obstante veredicto in favor of Council. Our action in affirming the judgment means that we need consider only Council's point that the jury's failure to make a favorable finding in connection with its counterclaim under DTPA must be held to be against the overwhelming weight and preponderance of the evidence.

■ Council insists that plaintiff made false representations concerning the lease, and points to evidence that the president presented to Council's attorney a copy of the lease between Chase and plaintiff which included no reference to the coaxial cable, representing that it was the complete lease between Chase and plaintiff. Council further points out that after the sub-lease was terminated, plaintiff claimed that the cable was part of the leased equipment because it was included in the list of "Local Origination Equipment" which plaintiff then claimed was a part of the original lease.

We have held that the paper which mentioned the cable as "Local Origination Equipment" was not a part of the lease between Chase and plaintiff. This holding means that the original lease did not contain any reference to the cable, so that the delivery to Council's attorney of a copy of the original lease which contained no mention of the cable cannot be characterized as a false, misleading or deceptive act as defined by section 17.46(b)(12) of the DTPA. TEX.BUS. & COM.CODE ANN. § 17.41–.63 (Vernon 1987).[1] Nor can such action be said to constitute unconscionable conduct which is denounced by section 17.-45(5).

■ Even if we assume plaintiff's conduct was deceptive or unconscionable, it is not actionable under section 17.50(a) unless it is a producing cause of actual damages. Council argues that it sustained damages consisting of the cost of storing the replaced equipment which plaintiff refused to accept and the attorney's fees incurred in defending plaintiff's suit.

■ Producing cause is "an efficient, exciting, or contributing cause, which in a natural sequence," produces the injuries or damages for which claimant seeks recovery. *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975). There is no causal connection between plaintiff's representations concerning the cable and the costs incurred in storing the replaced equipment. Plaintiff's refusal to accept return of the replaced equipment was based on Council's refusal to deliver the new equipment to

1. All statutory references will be to the DTPA.

plaintiff, and not on Council's failure to return the cable. It should be pointed out that since the cable was not stored, no storage costs were incurred and there was no evidence of the cost of such storage.

Section 17.50(d) gives a consumer the right to recover attorney's fees incurred in the successful prosecution of a suit for damages under DTPA. However, no attorney's fees can be recovered in the absence of actual damages. *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984). Attorney's fees incurred in defending a suit are not actual damages under DTPA. *Brown Foundation Repair and Consulting, Inc., v. Friendly Chevrolet Co.,* 715 S.W.2d 115, 119 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Council contends that plaintiff's false representation that the system was operational and would perform in a manner appropriate for a high-rise condominium constituted a violation of section 17.46(b)(7) which brands as a false, misleading or deceptive act a representation that goods are of a particular standard, quality or grade if they are not.

There is evidence that the occupants of the condominium units continually complained that the system never worked properly, required constant repairs, and that eventually the system had to be replaced. Plaintiff's president testified he received no complaints while he owned the system and that he had personally checked every outlet in each unit to determine that the system worked properly. There was evidence that after execution of the sub-lease the system suffered water damage, the building underwent extensive renovation, and the satellite dish was moved from its original ground level location to the top of a new parking garage. Under such conflicting testimony, the jury could have reasonably concluded that the system was working properly when the sub-lease was executed and that the problems resulted from the water damage and the re-location of the dish following the extensive renovation of the building.

After reviewing all of the evidence, we cannot say that the jury's failure to make the findings required to support Council's DTPA claim are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The judgment of the trial court is affirmed.