TRICO MARINE SERVICES, INC.; Trico Marine Assets, Inc.; Trico Marine Operators, Inc.; Trico Marine International, Inc.; and Trico Servicos Maritimos, LTDA, Appellants,

v.

STEWART & STEVENSON TECHNICAL SERVICES, INC. and GE Packaged Power, Inc., Appellees.

In re Trico Marine Services, Inc.; Trico Marine Assets, Inc.; Trico Marine Operators, Inc.; Trico Marine International, Inc.; and Trico Servicos Maritimos, LTDA, Relators.

Nos. 01–01–01067–CV, 01–01–01239–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 11, 2002.

Kevin Dubose, Hogan Dubose & Townsend, L.L.P., Paul D. Clote, Attorney at Law, Houston, for Appellants.

Harry Paul Weitzel, John D. Walker, Beck, Redden & Secrest, L.L.P., Michael P. Cash, Eleanor Hebert Hodges, Cash & Allen, L.L.P., Houston, for Appellees.

Eleanor Hebert Hodges, Cash & Allen, L.L.P., Harry Paul Weitzel, Beck, Redden & Secrest, L.L.P., Houston, for real parties in interest (Case No. 01-01-01239-CV).

Paul D. Clote, Attorney at Law, Kevin Dubose, Hogan, Dubose & Townsend, L.L.P., Houston, for Relators in (Case No. 01-01-01239-CV).

Panel consists of Justices COHEN, WILSON,* and NUCHIA.

## OPINION

MURRY B. COHEN, Justice.

By interlocutory appeal and mandamus, appellants/relators (together, "Trico") challenge an order granting a motion to com-

---

* Justice Davie Wilson, who retired from the First court of Appeals on March 31, 2002, continues to sit by assignment for the disposition of this cause, which was submitted on March 18, 2002.

pel arbitration. We dismiss the appeal for want of jurisdiction and conditionally grant mandamus relief.

## Background

In October 1996, Trico bought turbine engines from appellee/real-party-in-interest Stewart & Stevenson Technical Services, Inc. ("S & S"). Trico sued S & S and its successor GE Packaged Power, Inc. ("GE") when the engines allegedly failed.

S & S and GE moved to compel arbitration, and Trico moved to stay arbitration. After a non-evidentiary hearing, the trial judge compelled arbitration after denying Trico an evidentiary hearing. The trial judge did not file fact findings or legal conclusions.

## Interlocutory Appeal (Our Cause No. 01–01–01067–CV)

S & S and GE have moved to dismiss Trico's interlocutory appeal.

■ S & S and GE's arbitration motion referred to both the Texas General

Arbitration Act ("TAA")[1] and the Federal Arbitration Act ("FAA"),[2] and the trial judge did not state which act applied. We hold the FAA controls. Trico's principle places of business are in Louisiana and Brazil, while S & S's is in Texas. Trico alleged the turbine engines were for an ocean-going vessel that would be chartered by Brazil's national oil corporation to transport oilfield crews off the Brazilian coast. This contract therefore concerns both a "maritime transaction" and a "transaction involving [foreign or interstate] commerce," either of which requires the FAA's application. 9 U.S.C. § 2 (2001) (applying to arbitration provisions in these transactions); *see In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex.1999) (parties' residing in different states supported conclusion that contract involved interstate commerce so that FAA applied). Mandamus, not interlocutory appeal, lies over an order compelling or denying arbitration under the FAA.[3] *See In re Am. Homestar, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001) (order compelling arbitration under FAA); *Jack B. Anglin Co. v. Tipps*, 842

1. TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon Supp.2002).

2. 9 U.S.C. §§ 1–16 (2001).

3. We thus need not reach the issue, briefed by the parties, of whether the TAA allows interlocutory appeal of orders granting an application to compel arbitration. *Compare Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271–72 (Tex.1992) (stating in dictum that the FAA and TAA "permit ... appeal from an interlocutory order granting or denying a request to compel arbitration") *with* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a)(1), (2) (Vernon Supp.2002) (allowing interlocutory appeal of orders, among others, *denying* an application to compel arbitration or *granting* an application to stay arbitration); TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a) (Vernon Supp. 2002) (omitting orders granting application to compel arbitration among orders appealable interlocutorily); *Glazer's Wholesale Distribs.,*

*Inc. v. Heineken USA, Inc.*, No. 05–99–01685–CV, slip op. at 8, —— S.W.3d ——, ——, 2001 WL 727351 (Tex.App.-Dallas June 29, 2001, rule 53.7(f) motion filed) (consolidated orig. proceeding and interlocutory appeal; designated for publication) (declining to follow this dictum in *Anglin* ); *In re Godt*, 28 S.W.3d 732, 738 (Tex.App.-Corpus Christi 2000, orig. proceeding) (noting no interlocutory appeal lies over orders compelling arbitration entered under the TAA); *Materials Evolution Dev. USA, Inc. v. Jablonowski*, 949 S.W.2d 31, 33 (Tex.App.-San Antonio 1997, no writ); *Lipshy Motorcars, Inc. v. Sovereign Assocs., Inc.*, 944 S.W.2d 68, 69–70 (Tex.App.-Dallas 1997, no writ) (declining to follow this dictum in *Anglin* ); *Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing & Remodeling Co.*, 940 S.W.2d 150, 153–54 (Tex.App.-San Antonio 1996, no writ) (same); *and Gathe v. Cigna Healthplan of Texas, Inc.*, 879 S.W.2d 360, 362 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (same).

S.W.2d 266, 272–73 (Tex.1992) (order denying arbitration under FAA). *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a) (Vernon Supp.2002) (allowing for interlocutory appeal only of orders entered "under this chapter," *i.e.*, the TAA); TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a) (Vernon 1997) (omitting arbitration orders as those for which interlocutory appeal is allowed).

Accordingly, we dismiss Trico's interlocutory appeal. We further deny S & S and GE's motion for sanctions because (1) their own arbitration motion cited both the TAA and FAA and (2) as mentioned above, the Texas Supreme Court opinion in *Jack B. Anglin Co. v. Tipps* contained dictum suggesting that an appeal might lie. *See id.*, 842 S.W.2d at 271–72.

### Mandamus (Our Cause No. 01–01–01239–CV)

In issue one, Trico argues arbitration is improper because the contract did not contain an arbitration clause. In issue two, Trico contends the trial judge erred in denying an evidentiary hearing on whether a document containing an arbitration clause was attached to the contract. We sustain both issues, although we do not grant all of the relief Trico requests.

### 2. Law of Arbitration and Standard of Review

■ We review for clear abuse of discretion. *Anglin*, 842 S.W.2d at 271. A judge abuses his discretion when he errs in determining what the law is or in applying the law to the facts. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703 (Tex. 1998).

■ "A party cannot be required to arbitrate unless it has agreed to do so." *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a) (Vernon Supp. 2002) (requiring judge to order arbitration upon agreement to arbitrate). The parties' agreement to arbitrate must be clear. *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding). In this determination, Texas contract law applies. *See Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 357 (Tex.App.-Houston [1st Dist.] 1995, no writ) (consolidated original proceeding and appeal). Construction of an unambiguous contract is a question of law. *See MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). If the parties dispute the arbitration agreement's existence, the judge must summarily hold an evidentiary hearing on that issue. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.021(b), 171.023(b) (Vernon Supp.2002); *Anglin*, 842 S.W.2d at 268–9. We apply the Texas procedural statute on evidentiary hearings because Texas procedure controls even though the FAA applies. *See In re MHI Partnership, Ltd.*, 7 S.W.3d 918, 921 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding).

### 2. Incorporation by Reference

■ The contract consisted of two documents: (1) an unsigned commercial proposal for the engines dated October 14, 1996 ("the Proposal") and (2) a signed purchase order confirmation dated October 15, 1996 ("the Confirmation").[4] The par-

---

**4.** Trico contends the unsigned Proposal was not sufficiently incorporated into the signed Confirmation for the two documents to constitute one contract. Its argument below, however, focused on the incorporation of a third document into the Proposal, not the Proposal's incorporation into the Confirmation. Additionally, neither Trico's motion opposing arbitration, nor the affidavits supporting that motion, argued that the contract did

ties' dispute also involves a separate S & S document, entitled "General Terms & Conditions of Sale" ("the GTCS paper"), which contained an arbitration clause.[5] S & S and GE asserted (1) the GTCS paper was physically included as a sixth and final page of the Proposal, and thus of the contract, at the time of contracting and (2) even if the GTCS paper was not physically attached, the contract—specifically, the Proposal—incorporated the GTCS paper by reference.

Trico denied that the GTCS paper was attached to the Proposal at the time of contracting. Trico's evidence showed the Proposal had only five pages and no attachments. This is important because arbitration was not mentioned in the Confirmation or in the Proposal (if the Proposal had only five pages), but arbitration was mentioned in the GTCS paper. Thus, there was a disputed material fact issue.

To avoid an evidentiary hearing on what it conceded was a factual dispute about the GTCS paper's attachment, S & S and GE stipulated (for that hearing only) that the GTCS paper was not physically attached to the Proposal. Because the GTCS paper was stipulated not to have been attached, arbitration was proper only if, as a matter of law, the Proposal incorporated the GTCS paper by reference. The trial judge agreed with S & S and GE that, as a matter of law, the Proposal incorporated the GTCS paper by reference.

And so we turn to the Proposal's terms. S & S and GE's incorporation-by-reference argument relied entirely on two references in the Proposal to "General Terms and Conditions of Sale"—the same words that appeared at the top of the GTCS paper. In the Proposal, the heading "VII. General Terms and Conditions of Sale" appeared (1) in the table of contents and (2) at the bottom of page five. An inch of blank space appeared below page five's heading VII.

■ "[A]n unsigned paper may be incorporated by reference into a paper signed by the person sought to be charged. The language used is not important provided the document signed by the defendant plainly refers to another writing." *Owen v. Hendricks,* 433 S.W.2d 164, 166 (Tex.1968). The absence of such a reference within the signed document "shows that the parties did not intend to contract with reference to the other instrument." *Clutts v. S. Methodist Univ.,* 626 S.W.2d 334, 336 (Tex.App.-Tyler 1981, writ ref'd n.r.e.).

We hold that the mere mention of "General Terms and Conditions of Sale" in the Proposal's table of contents, and again as heading VII, does not plainly refer, as a matter of law, to any separate document. An inch of blank space follows page five's heading VII. It is not enough that the Proposal's heading VII and the external

---

not consist of two documents, and the affidavits strongly imply the opposite. Therefore, for purposes of this opinion, we consider it undisputed that the Proposal and the Confirmation *together* constituted *one* contract. Consequently, it does not matter that the Proposal was unsigned; the Confirmation that incorporated the Proposal was signed, and the trial judge could have reasonably concluded that the two documents were legally one. Cf. *Milam Dev. Corp. v. 7*7*0*1 Wurzbach Tower Council of Co–Owners, Inc.,* 789 S.W.2d 942, 945 (Tex.App.-San Antonio 1990, writ

denied) (because sub-lease between plaintiff and defendant incorporated by reference a lease between plaintiff and a third-party, court looked to the terms of the plaintiff/third-party lease in plaintiff's suit for defendant's breach of the sub-lease).

**5.** We must presume for this opinion, based on S & S's and GE's concessions made in the trial court and discussed below, that the GTCS paper was a separate document from the contract.

document have the same title. Before heading VII can incorporate something by reference, it must first make a reference. And that reference must be "plain." *See Owen,* 433 S.W.2d at 166. Heading VII does not do that. Heading VII is, at best, ambiguous—which means that any attempted reference it made was not "plain." *See Owen,* 433 S.W.2d at 166.

We distinguish the cases on which S & S and GE rely. In *MTrust Corp. N.A. v. LJH Corp.,* the contract expressly referred to an "Exhibit 'B' attached hereto and incorporated herein by reference for all purposes," a much more specific reference than here. 837 S.W.2d 250, 253–54 (Tex. App.-Fort Worth 1992, writ denied). The court in *Castroville Airport, Inc. v. City of Castroville* held that an agreement plainly referring to documents "attached [as] Exhibit A" and "attached as Exhibit B" incorporated those exhibits by reference, even if the parties disputed whether the exhibits were actually attached. 974 S.W.2d 207, 211–12 (Tex.App.-San Antonio 1998, no writ). The contracts in *MTrust* and *Castroville* clearly referred to an external document. Here, in contrast, there is nothing more than a heading followed by blank space.

We also distinguish *In re AGC Cotton Marketing, L.L.C.,* on which S & S and GE rely. 985 S.W.2d 632 (Tex.App.-Amarillo 1999, orig. proceeding). That contract had a category entitled "Rules," followed by the words "Texas Cotton Association." *Id.* at 633. Assuming, for argument only, that "Rules: Texas Cotton Association" was an agreement to incorporate the association's rules into the contract, the court nonetheless held those particular rules did not require arbitration. *Id.* at 634. Even if this can be construed as a holding that the

quoted language incorporated the rules by reference,[6] our conclusion does not change. The heading "Rules," followed by the name of an external and separate association, plainly refers to something external. The heading "General Terms and Conditions of Sale," followed only by a blank, does not—and certainly not plainly. And the words "General Terms and Conditions of Sale" mean even less standing off by themselves in the Proposal's table of contents.

Nor do we agree with S & S and GE's claim that our interpretation leaves heading VII meaningless. *See Blaylock v. Am. Guarantee Bank Liab. Ins. Co.,* 632 S.W.2d 719, 722 (Tex.1982) (holding contract must not be construed so as to render some terms meaningless). That claim assumes that the topical heading "General Terms and Conditions of Sale" is a contractual term, which we doubt. *Cf.* TEX. GOV'T CODE ANN. § 311.024 (Vernon 1998) (statutory headings do not limit or expand statute's meaning). For S & S and GE to win with this argument, they must show that this blank space means that Trico intentionally relinquished a known constitutional right—the right to a trial before a judge and jury. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (defining waiver as the intentional relinquishment or abandonment of a known right); *College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 682, 119 S.Ct. 2219, 2229, 144 L.Ed.2d 605 (1999) (courts indulge every reasonable presumption against waiver of fundamental constitutional rights, here, trial by jury). Courts will not presume such a waiver from a silent record. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962).

**6.** Despite the "argument only" qualification noted above, later, possibly contradictory language suggests the court may have believed the language actually sufficed for incorporation, *see id.* at 634–35.

That is simply more weight than blank paper can bear. Assuming that "General Terms and Conditions of Sale" is really a contractual term and not merely a topic heading in search of a topic, we would hold that term meaningless long before we would hold that it waived a right as precious as a trial before a jury—or even before a judge.

### 3. Conclusion

We hold the trial judge abused his discretion by implicitly holding that this particular text constituted, as a matter of law, Trico's agreement to arbitrate. We thus sustain this portion of issue one.

### 4. Evidentiary Hearing

■■■ Trico asked for the judge (1) to deny S & S and GE's motion to compel arbitration and (2) to grant Trico's own motion to stay arbitration. Alternatively, Trico requested an evidentiary hearing under Tex. Civ. Prac. & Rem.Code Ann. §§ 171.021(b) and 171.023(b). We hold that an evidentiary hearing is required.

Trico contended that, because of S & S and GE's one-time concession that the GTCS paper was not attached, the trial judge should deny arbitration as a matter of law since there was also no incorporation by reference. On appeal, Trico contend that, *even if the GTCS paper was attached,* the GTCS paper still did not become part of the Proposal because of the lack of "incorporation" language in the Proposal. This latter argument was not presented to the trial judge, and even if it had been, the circumstances would not justify a holding by us that, as a matter of law, arbitration should be stayed.

S & S and GE did not argue below that the GTCS paper was attached to the Proposal as an exhibit, but that the GTCS paper *actually constituted page six of the Proposal, i.e.,* that the text for page five's heading VII ("General Terms and Condi-. tions of Sale") was found on page six, which was the GTCS paper. As stated, Trico denied that and presented controverting evidence on that material fact. That dispute required an evidentiary hearing. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 171.021(b), 171.023(b); *Anglin,* 842 S.W.2d at 268–69.

Nor would a stay of arbitration be supported by *Milam Development Corp. v. 7*7*0*1 Wurzbach Tower Council of Co-Owners, Inc.,* 789 S.W.2d 942 (Tex.App.-San Antonio 1990, writ denied). There, the court held that unsigned documents containing lists, stapled to a lease that did not mention or refer to the unsigned documents, were not part of the lease. *Id.* at 945. This case is different. If the trial judge were to find, after an evidentiary hearing, that the GTCS paper was physically included as page six, he could then reasonably find that page was a part of the agreement because it was mentioned by name, "General Terms and Conditions of Sale," on page five. The GTCS paper would then not be totally separate, like the document in *Milam Development.* We find *Cavazos v. Cavazos,* 941 S.W.2d 211 (Tex.App.-Corpus Christi 1996, writ denied), similarly distinguishable. *See id.* at 213, 214–15 (holding an unattached "Schedule Five," located among court's papers, was not part of divorce agreement because the agreement expressly referred to and incorporated only four schedules, but did not mention a fifth).

We sustain issue two. We overrule that portion of issue one requesting we issue the writ to stay arbitration.

Accordingly, we conditionally grant the writ and direct the trial judge (1) to vacate his order compelling arbitration and (2) to conduct an evidentiary hearing to determine the disputed facts relevant to the issues permitted under sections 171.021(b)

and 171.023(b). We are confident the trial judge will comply with this order. Therefore, we need not issue the writ at this time.