Opinion issued March 17, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00779-CV

———————————

Prime Tree and Landscaping Services
d/b/a Mulch Matters, Appellant

V.

Americon Services Company, Inc., Appellee



 



 

On Appeal from County Court at Law No. 2

Harris County, Texas



Trial Court Case No. 886143

 



 

 

MEMORANDUM OPINION

In this breach-of-contract case,
appellant, Prime Tree and Landscaping Services, Inc. d/b/a Mulch Matters
(“Prime Tree”), appeals from the trial court’s partial summary judgment
rendered in favor of appellee, Americon Services Company (“Americon”), and from
the final judgment rendered from a jury verdict in favor of Americon and
against Prime Tree.  Specifically, Prime
Tree contends the trial court erred by granting Americon’s motion for summary
judgment on the terms of the parties’ contract and that the court should have
granted its motion for directed verdict challenging the jury’s damages
award.    

We affirm.

Background

          This case involves a contract to
provide dirt for a construction project. 
Americon is a civil site contractor that constructs things like building
pads and roads.  Americon was hired as a
subcontractor by Dyad Construction, a general contractor working at Galena Park
Elementary School. 

John Carey, Americon’s Vice President, testified that he
contacted Lance Bowe to obtain a quote for dirt that Americon needed for this
Galena Park work.    Bowe supplies dirt through three separate
companies, one of which is appellant here, Prime Tree.  

For the Dyad job at Galena Park, Americon specifically needed
“select fill,” a type of dirt suitable for building foundations.  An important factor associated with select
fill is its plasticity index (“PI”), a scientific measurement of the dirt.  The PI determines the suitability of the dirt
for use under slabs, foundations, and buildings.  Generally, the soil’s plasticity is affected
by the balance of clay and sand in the dirt.[1]  Dyad’s job specifications for Americon’s work
called for “a PI dirt of 15-to-20.”  

As required by Dyad, a sample of Bowe’s dirt was inspected by
a testing laboratory and reflected a PI level of 16.  Following that testing, Americon incorporated
the pricing that Carey obtained from Bowe into the formal bid prepared for Dyad
for the Galena Park job.    

On September 11, 2006, Americon faxed to Mulch Matters
purchase order no. 7256-01 (“Purchase Order”) calling for approximately 1650
loads of select fill with a PI of 15-20 at $32.00 per load.  Less than 30 minutes later, Sherlyn Cope (a
Mulch Matters employee) faxed back to Americon an estimate for providing the
select fill.  The estimate stated “[p]er
your PO 7256-01,” a quote of approximately “1650 Loads of Select fill at $32
per load.”  On the fax cover sheet was a
note from Cope requesting Americon “sign and fax back prior to [the] job
beginning.”    Bernice Clay, Americon’s
president, signed and dated the estimate and faxed it back the same day.[2]  

Two days later, on September 13, 2006, dirt began being
delivered to the Galena Park site.  When
Carey arrived at the site that morning, he immediately noticed that the dirt
did not appear to conform to the PI level of 15-20 as specified in the purchase
order.  Concerned, he followed one of the
dump trucks supplying the dirt back to the dig site to investigate.  He then discovered that the source location
of the dirt had changed from the original site where the engineers had tested
the PI level to a new site where PI levels had not been tested.  Carey asked Bowe’s on-site employee to remedy
the problem and requested that they continue supplying dirt.  Upon being notified of the problem, however,
Bowe stopped all further supply of dirt and terminated the relationship with
Americon.    

When the dirt was delivered, Dyad’s engineers also visually
inspected it and noted it appeared to be nonconforming.  Laboratory tests confirmed a PI range of 25-35,
outside the acceptable range.  Dyad gave
Americon two choices: (1) remove the non-conforming dirt and replace with the
specified select fill, or (2) mix additives into the dirt to bring it within
the PI level required for the site. 
Carey testified that this first option was not feasible, as Bowe was not
willing to take the dirt back, and that transport to the only other location
with capacity to take the dirt would be cost-prohibitive.  Americon thus determined that the quickest
and easiest alternative was to use additives to correct the PI.  In doing so, it incurred additional costs,
including for (1) equipment, (2) delay, (3) labor, (4) materials used as mix, 
(5) retesting costs, and (6) fuel. 

Americon finished the project by contracting with another
dirt supplier.  This supplier provided
less expensive dirt, but was located farther away from the construction project
site, so the cost to transport the dirt was higher than the cost to transport
dirt from the Mulch Matters site. 

On September 26, 2006, Mulch Matters sent Americon a $11,028
invoice for the dirt supplied to the Galena Park site before the dispute arose.
 Bowe took the position that Americon
owed this amount for the dirt supplied to the Galena Park site.  Americon, on the other hand, asserted that it
should be reimbursed for the problems associated with the non-conforming dirt.

A.  
Trial Court Proceedings

In February 2007, Americon sued “Mulch Matters Inc.,” another
Bowe company, seeking damages for breach of contract and for violations of the
Texas Deceptive Trade Practices Act (“DTPA”). 
Attached to its original petition was the Purchase Order and the Mulch
Matters estimate.  In December 2007,
Americon filed an amended petition, adding “Prime Trees, Inc.” and “Lance Bowe”
as defendants.  Americon also added
claims for common law fraud, fraud by nondisclosure, violations of the Texas
Finance Code, and theories of vicarious liability.  

In January 2008, Americon filed a motion for partial summary
judgment “on the limited issue of whether [the] contract contained
specifications for the select fill material.” 
Specifically, it asked the court to find that the PI specifications
found in the Purchase Order were incorporated by reference into Mulch Matters
estimate number 161 as a matter of law, and were, therefore, part of the
agreement between the parties.  The trial
court granted a partial summary judgment in February 2008, and ordered that
“the contract between Plaintiff and Defendant in this matter includes all terms
found in that certain Purchase Order dated September 11, 2006 and attached to
Plaintiff’s First Amended Petition as Exhibit ‘A.’”  

In April 2008, Americon filed a second amended petition
adding appellant, “Prime Tree and Landscaping Services, Inc. d/b/a Mulch
Matters” as a defendant.  In September
2008, Americon filed a traditional motion for summary judgment arguing that it
“is entitled to judgment as a matter of law on its breach of contract claim
against Defendant.”  The trial court
denied this motion for summary judgment.[3]

At trial, pursuant to the court’s prior summary judgment
ruling, the jury was instructed that the parties’ agreement “is the combined
terms of the American Services Company Inc.’s Purchase Order, dated September
11, 2006, and Prime Tree and Landscaping Services, Inc., d/b/a Mulch Matters’
Estimate, dated September 11, 2006.”  The
jury then found that “Prime Tree and Landscaping Services Inc. d/b/a Mulch
Matters fail[ed] to comply with its Agreement with Americon.”  It awarded $30,500.00 in actual damages,  $35,000.00 in trial attorney’s fees, and
$12,000.00 in conditional attorney’s fees for appeal.  It rejected Americon’s fraud claim against
Bowe.   

B.  
This Appeal

Prime Tree appealed, arguing there was error in the trial
court’s order granting partial summary judgment and in its failure to grant a
directed verdict.  

Summary Judgment

Prime Tree argues that trial court erred in granting
Americon’s partial summary judgment for four reasons.[4]  In its first point of error, Prime Tree
contends Americon’s Purchase Order was not in evidence nor properly proved up
by Americon’s motion for summary judgment. 
In its second point of error, it asserts the trial court erred in ruling
that Americon’s Purchase Order—which it contends Mulch Matters’s employee was
fraudulently induced to sign—contained the terms of the parties’ agreement.  In its third point of error, Prime Tree
contends Americon did not prove the necessary elements of its claim as a matter
of law and that material issues of fact existed sufficient to preclude the
granting of a summary judgment.   
Finally, in its fourth point of error, Prime Tree contends fact issues existed
as to each element of its affirmative defenses of fraud and lack of authority.

A.  
Standard of Review

To prevail
on a Rule 166a(c) summary-judgment motion, a movant must prove that there is no
genuine issue regarding any material fact and that it is entitled to judgment
as a matter of law. See Tex. R. Civ. P. 166a(c); Little v. Tex. Dep’t of Criminal Justice,
148 S.W.3d 374, 381 (Tex. 2004). A plaintiff moving for summary judgment must
conclusively prove all essential elements of its claim. See Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).
A matter is conclusively established if reasonable people could not differ as
to the conclusion to be drawn from the evidence. See City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  

If the
movant meets its burden, the burden then shifts to the nonmovant to raise a
genuine issue of material fact precluding summary judgment. See Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if
reasonable and fair-minded jurors could differ in their conclusions in light of
all of the summary-judgment evidence.   Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 755 (Tex. 2007).

On appeal, we review de novo a
trial court’s summary judgment ruling. See
Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844,
848 (Tex. 2009).  We consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not. See Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006).

B.  
Summary Judgment Evidence

The trial court’s summary judgment order states its finding
that “the contract between Plaintiff and Defendant in this matter includes all
terms found in that certain Purchase Order dated September 11, 2006 and
attached to Plaintiffs’ First Amended Petition at Exhibit ‘A.’”  In its first point of error, Prime Tree
asserts the “court erred in basing the Order granting partial summary judgment
on a document that was not in existence and not proved up in the motion for
Partial Summary Judgment.”  Specifically,
Prime Tree complains that there “is no Exhibit ‘A’ attached to Americon’s First
Amended Petition” and that “[n]o document attached to the motion [for summary
judgment] is identified as the said Exhibit A.” 
Because the order “refers to a document that is not in existence” and
because a “court cannot grant a summary judgment based on evidence that is not
properly submitted with the motion” Prime Trees argues, the granting of summary
judgment based on the Purchase Order was improper.    

In response, Americon contents that Prime Tree waived its
complaint by failing to object to any alleged defect in Americon’s summary
judgment evidence in the trial court. 
Had Prime Tree objected, Americon contends, it would have been permitted
to amend to remedy any error.  Moreover,
Americon argues, Prime Tree failed to specially except to Americon’s failure to
attach the Purchase Order to its First Amended Petition, which waived any
complaint about omissions in that filing. 
Finally, Americon notes that there has only been one Purchase Order at
issue and, thus, it “was clear which Purchase Order was referenced in the
Court’s Order.”  

Prime Tree is correct that the Purchase Order was not
appended as Exhibit A to Plaintiff’s First Amended Petition, and Americon
concedes as much.  It was, however,
attached as Exhibit A to Plaintiff Original Petition, and was attached to
Exhibit A of Americon’s summary judgment motion.[5]  

We agree with Americon that Prime Tree waived any argument
about Americon’s Purchase Order allegedly not being properly proved up with its
motion for summary judgment.  Only one
September 11, 2006 Purchase Order has been at issue in this case.  That Purchase Order was properly attached to
Americon’s summary judgment motion and proven up as summary judgment
evidence.  Prime Tree lodged no objection
to that evidence.  See Tex. R. Civ. P.
166a(f) (“Defects in the form of affidavits or attachments [to summary judgment
motions] will not be grounds for reversal unless specifically pointed out by
objection by an opposing party with opportunity, but refusal, to amend.”); see also Commint Technical Servs. Inc. v.
Quickel, 314 S.W.3d 646, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.)
(must object and obtain ruling on objections to form of summary judgment
evidence to preserve for appeal).  

We also conclude that the trial court’s erroneous reference
to the Purchase Order as “attached to Plaintiffs’ First Amended Petition at
Exhibit ‘A’” was harmless surplusage in the partial summary judgment
order.  Cf. Alegria v. Tex. Alcoholic Beverage Comm’n, 731 S.W.2d 723, 726
(Tex. App.—Houston [14th Dist.] 1987, no writ) (“Surplusage does not affect the
validity of a judgment.”).  Prime Tree
referenced the Purchase Order in its response to Americon’s motion for summary
judgment, and never took the position in the trial court that there was any
uncertainty about what document was at issue. 
Based on the court’s interlocutory summary judgment ruling, the jury was
charged that the parties’ agreement “is the combined terms of Americon Services
Company, Inc.’s Purchase Order, dated September 11, 2006, and Prime Tree and
Landscaping Services, Inc., d/b/a Mulch Matters’s Estimate, dated September 11,
2006.”  We overrule Prime Tree’s first
point of error.   

C.  
Fact issues

In moving for partial summary judgment on the terms of the
parties’ contract, Americon argued that its Purchase Order and Mulch Matters’
estimate should be read together—as an offer and acceptance—to be one unambiguous contract
containing the terms from each.  In
response, Mulch Matters argued the following as reasons that summary judgment
was not appropriate: (1) the required PI in the Purchase Order is not part of
the parties’ agreement because Mulch Matters’ estimate prepared in response to
the Purchase Order did not contain a guarantee of PI and the reference to the
Purchase Order’s number within that estimate was for identification only, not
for acceptance of its terms, (2) Sherlyn Cope, Mulch Matters’ employee who
signed the Purchase Order, was not authorized to do so, (3) Cope was
fraudulently induced into signing the Purchase Order, and (4) the “documents
are ambiguous and the testimony of Lance Bowe shows that Defendants did not
agree to provide dirt with a specific” PI level.  The trial court rejected these arguments and
granted Americon’s motion for partial summary judgment.      

In three points of error, Prime Tree lodges two related
substantive complaints about the trial court’s partial summary judgment that we
address together.  Specifically, in its
second, third, and fourth points, Prime Tree claims that its summary judgment
evidence raised material issues of fact regarding the terms of the parties’ agreement
and material issues of fact regarding its affirmative defenses of fraudulent
inducement and lack of authority.  In
response, Americon contends that Prime Tree has failed to show any harm, as it
was permitted to introduce evidence at trial in support of its defenses of fraudulent
inducement and lack of authority, and Bowe was permitted to testify that he did
not intend for the agreement with Americon to include a guarantee of PI.  Alternatively, Americon asserts that the
trial court’s ruling was correct, Mulch Matters’s estimate incorporated by
reference Americon’s Purchase Order, and the two together are unambiguous and
should be interpreted as a matter of law. 
Finally, Americon contends that Prime Tree’s other arguments lack merit
because Bowe’s representations about his intent are barred by the parol
evidence rule, and Americon’s Purchase Order was incorporated by reference and
a valid part of the parties’ agreement before Cope ever signed it, rendering
Prime Tree’s fraudulent inducement arguments moot. 

We agree with Americon that the trial court properly granted
Americon’s motion for summary judgment on the terms of the parties’
agreement.  Americon’s Purchase Order
specified “(+/-) 1650 Loads” of  “Select
Fill (p.i. 15, 16, 17 – 20 or less)” at “32.00/per load.”  Approximately 20 minutes after receiving
Americon’s Purchase Order, Mulch Matters responded with its Estimate quoting
“Per your PO 7256-0 . . . Approx 1650 Loads of Select fill at $32.00 per load.”  While Mulch Matters insists this was a
counterproposal, the estimate specifically references Americon’s Purchase Order
by name and states that it has been prepared “Per” that Purchase Order.  Further, the Estimate tracks most of the
Purchase Order material terms, i.e. product, price and quantity, while not
expressly contradicting the PI terms it claims it purposefully omitted.  

If a contract is unambiguous, it should be interpreted as a
matter of law by the court.  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1993).  “Whether a contract is
ambiguous is a question of law for the court to decide by looking at the
contract as a while in light of the circumstances present when the contract was
entered.” Nat’l Union Fire Ins. Co. v.
CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995).  

“[A]n unsigned paper may be incorporated by reference into a
paper signed by the person to be charged.” 
Trico Marine Servs., Inc. v.
Stewart & Stevenson Technical Servs., Inc., 73 S.W.3d 545, 549 (Tex.
App.—Houston [1st Dist.] 2002, orig. proceeding [mand. denied]) (quoting Owen v. Hendricks, 433 S.W.2d 164, 166
(Tex. 1968)).  “The language used is not
important provided the document signed by the defendant plainly refers to
another writing.”  Trico Marine Servs., Inc., 73 S.W.3d at 549.  The incorporated document, however, “must be
referenced by name.”  Stewart & Stevenson, LLC v. Galveston
Party Boats, Inc., No. 01-09-00030-CV, 2009 WL 3673823, at *11 (Tex.
App.—Houston [1st Dist.] Nov. 5, 2009, no pet.) (mem. op.).  An incorporated document becomes part of the
single agreement.  In re Bank One, N.A., 216 S.W.3d 825, 826 (Tex. 2007) (orig.
proceedings).

We agree with the trial court that the estimate unambiguously
incorporated by reference Americon’s Purchase Order, Trico Marine Servs., 73 S.W.3d at 549, and, thus, the trial court
correctly construed the two documents as constituting the parties’
agreement.  In re Bank One, N.A., 216 S.W.3d at 826.  

We also conclude that Bowe’s and Cope’s testimony that Mulch
Matters points to does not, as it claims, create a fact issue that should have
defeated summary judgment.  In responding
to Americon’s motion, Mulch Matters relied upon an affidavit from Bowe stating
that he “told Plaintiff’s representative that Defendant did not guarantee
[PI]s” and that, by “referencing Plaintiff’s Purchase Order number[,] Defendant
did not intend to agree to the [PI] stated in the Purchase Order.”  The affidavit further provided that it “is
standard in the industry to reference purchase orders for the sole purpose of
giving the number, not agreeing to the terms.” 
According to Prime Tree, because this uncontroverted evidence was not
objected to, the “court should have taken this testimony as true and denied the
summary judgment.” 

The issue, however, is not whether the evidence was objected
to, but whether it could properly raise a fact issue to defeat summary
judgment.  The parol evidence rule is not
a rule of evidence, but a rule of substantive law.  Hubacek
v. Ennis State Bank, 317 S.W.2d 30, 31 (Tex. 1958).  Parol evidence cannot be used to change
contract terms that must be given their “plain and ordinary meaning unless the instrument indicates the parties
intended a different meaning.”  Dynegy Midstream Servs., Ltd. v. Apache Corp,
294 S.W.3d 164, 168  (Tex. 2009)
(emphasis added); Meyerland Cmty. Improvement
Ass’n v. Temple, 700 S.W.2d 263, 267 (Tex. App.—Houston [1st Dist.] 1985,
writ ref’d n.r.e.) (“[I]n construing a contractual provision, it is the
objective, and not the subjective, intent of the parties that must be
ascertained; it is the intent expressed or apparent in the writing that
controls”).    Parol evidence thus cannot
create a fact issue about a contract’s meaning to defeat summary judgment when
that contract is unambiguous.  DRC Parts & Accessories v. VM Motori,
112 S.W.3d 854, 858-59 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  And, more specifically, parol evidence about
“standard practice in the industry,” such as that relied upon by Prime Tree
here, cannot be used to vary or contradict the terms of unambiguous
contracts.  Dynegy Midstream Servs., 294 S.W.3d at 169-70.     

Prime Tree’s evidence about the circumstances under which
Cope signed Americon’s Purchase Order likewise fails to raise a fact issue, but
for a different reason.  Prime Tree cites
summary judgment evidence that Cope’s signature was not secured on Americon’s
Purchase Order until two days after Mulch Matters had begun delivering dirt
under the parties’ agreement.  Bowe’s
affidavit stated that Cope was not “authorized to sign such document[]” and
that she only signed it “because the person presenting it to her told her that
[Bowe] has said for her to sign it.” 
Prime Tree argues this evidence “raised material issues of fact
regarding its affirmative defenses of fraudulent inducement and lack of
authority” and established that “the summary judgment was based on this
fraudulent document.”  Americon responds
that the circumstances of the signing of the Purchase Order “are irrelevant and
failed [to] raise a genuine issue of material fact regarding the terms of the contract
between the parties” because the parties entered into a binding agreement
before the Purchase Order was signed.  

“Although statements about the meaning of a contract’s terms
are ordinarily not admissible to add to, vary, or contradict the terms of an
unambiguous written contract, they are admissible to show whether a party was
fraudulently induced to enter the contract.” 
Young v. Neatherlin, 102
S.W.3d 415, 422 (Tex. App.—Houston [14th Dist.] 2003, no pet.).  But a “motion for summary judgment is not
defeated by the presence of an immaterial fact issue.” Howell v. Murray Mortg. Co., 890 S.W.2d 78, 84 (Tex. App.—Amarillo
1994, writ denied).  “A fact is material
if it affects the ultimate outcome of the lawsuit under the governing
law.”  Pierce v. Washington Mut. Bank, 226 S.W.3d 711, 714 (Tex.
App.—Tyler 2007, pet. denied).  

Here, evidence germane to the alleged fraudulent procurement
of Prime Tree’s employee’s signature on Americon’s Purchase Order is only
material for purposes of defeating summary judgment if that signature is
relevant to whether a contract exists or is enforceable.  Americon does not contend, however, that the
signed Purchase Order formed the contract. 
Instead, Americon relies upon Mulch Matter’s estimate as the contract,
which we have held—even taking Prime Tree’s evidence as true—already  incorporated the purchase order by reference before Prime Tree claims the signature
was fraudulently induced.  Because an
unsigned document can be incorporated by reference, the validity of a later
acquired signature is irrelevant.  E.g., Trico Marine Servs., 73 S.W.3d at 549 (“[A]n unsigned paper may be
incorporated by reference . . . .”). 
This is in fact why the trial court refused Prime Tree’s tender and
request for a submission of a jury “question regarding fraud in the
inducement  . . . regarding Sherilyn Cope
being asked to sign the purchase order,” explaining: “This question is also
rejected as the contract was formed before she ever signed off.  There’s no reliance.”    

Finding no error in the trial court’s granting Americon’s
partial motion for summary judgment on the terms of the contract, we overrule
Prime Tree’s second, third, and fourth points of error.  

Instructed Verdict

In Prime Tree’s fifth issue, it contends the trial court erroneously
failed to grant a directed verdict on the jury’s damages award.  A denial of a motion for directed verdict may
be reversed when the evidence conclusively proves a fact that establishes a
party’s right to judgment as a matter of law, and there is no evidence to the
contrary.  Hartford Fire Ins. Co. v. C. Springs 300, Ltd., 287 S.W.3d 771, 777
(Tex. App.—Houston [1st Dist.] 2009, pet. denied).  In reviewing the denial of a directed verdict,
we consider all the evidence in the light most favorable to the nonmovant and
disregard all evidence to the contrary.  Id.  Every
reasonable inference is resolved in favor of the nonmovant.  Id.
If there is any conflicting evidence of probative value on any theory of
recovery, the issue must go to the jury. 
Id.

The jury found that $30,500 would “fairly and reasonably
compensate Americon Services Company, Inc. for its damages.”  It was instructed to consider (1) “reasonable
and necessary cost to bring the select fill into compliance with the contract
specifications,” (2) “reasonable and necessary costs incurred by Americon . . .
due to the delay in performance caused by the nonconforming select fill, . . .
include[ing], but not limited to, equipment rentals and worker wages,” and (3)
“extra costs to obtain replacement select fill to complete the contract
quantity.”  Prime Tree asserts that the
court should have granted its motion for a directed verdict because Americon
failed to prove that the expenses for which it was awarded damages were
reasonable and necessary.  

In a breach-of-contract case, a party seeking to recover its
costs of completion has the burden to prove that the damages sought are
reasonable.  See Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195,
200 (Tex. 2004); Burke v. Union Pac. Res.
Co., 138 S.W.3d 46, 73 (Tex. App.—Texarkana 2004, pet. denied).  Evidence of the amounts charged and paid,
standing alone, is no evidence that such payment was reasonable and
necessary.  Mustang Pipeline Co., 134 S.W.3d at 200–01.  However, “reasonable and necessary” are not
magic words that a witness must speak to support a jury’s award.  Burke,
138 S.W.3d at 73.  Instead, a party need
only to present sufficient evidence to support a jury’s finding.  Id.

We hold that Americon presented sufficient evidence to
support the jury’s damages finding. 
There is evidence that Prime Tree refused to replace the nonconforming
dirt or accept the dirt back.  Americon
thus either had to fix the PI level of the non-conforming dirt or replace it
with another supplier’s dirt.  Americon
presented evidence that, by balancing the PI level rather than replacing the
non-conforming dirt, Americon reduced and mitigated its costs by selecting “the
quickest and cheapest alternative.”  The
record further demonstrates that, when it used equipment to fix the problem of
the non-conforming dirt, Americon mitigated costs where it could by using
equipment that it owned, and assigning a reduced rate for the daily use of the
equipment, rather than renting equipment at a higher per-day rental charge.  

Additionally, the record reflects that Americon incurred
other unavoidable costs and delays due to the non-conforming dirt.  For instance, there were additional costs
associated with shutting down the project, testing the dirt, non-productive
rental equipment that Americon could not use until the PI problem was fixed,
use of equipment that could have been in use at other work sites instead, and
additional labor costs.  Further, because
Americon could not finish out its dirt order with Prime Tree, it had to go to
another supplier to get the dirt it needed. 
Although the dirt from the other supplier was cheaper, the trucking
costs were higher because the supplier’s site was located further from
Americon’s project site, causing Americon to incur additional costs above what
it would have cost to supply all the dirt from Prime Tree. 

Americon presented detailed evidence that it incurred
additional expenses of $56,138.85 to remedy the nonconforming dirt.  From that, it asked the jury to award it a
reduced amount of $42,234.00.  The jury
discounted this amount further, actually awarding $30,500.00.  Because there is ample evidence that Americon
incurred significant costs in correcting the nonconforming dirt, and evidence
that it attempted to repair the problem in a cost effective way that mitigated
the total cost, we conclude the record contains some evidence that the damages
awarded were both reasonable and necessary. 
See Burke, 138 S.W.3d at 73
(concluding that evidence comparing cost of successfully repairing well with
cost of unsuccessful repair attempt and original cost of well was sufficient
for rational jury to conclude cost of repair was reasonable and
necessary).  The trial court did not err
in denying Prime Tree’s motion for a directed verdict.

We overrule Prime Tree’s fifth issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice  

 

Panel consists
of Chief Justice Radack, and Justices Massengale and Nuchia.[6]











[1]
          This matters because, for example, if there is too much clay
mixed into the dirt, the clay can expand and crack a foundation laid on top of
the dirt.

 





[2]
          Cope’s signature, also dated
September 11, 2006, appears on the Americon’s Purchase Order.  As discussed in more detail later in this
opinion, Mulch Matters claims this signature was actually procured on a later
date.  





[3]
          On May 5, 2009, the first day of trial, Americon non-suited parties
Mulch Matters, Inc. and Prime Trees, Inc. and dismissed its DTPA and Texas
Finance Code violations claims against Prime Tree and Bowe.  As the various pleadings asserting claims
against Bowe’s various companies reflect, there was some dispute at
trial as to which of Bowe’s companies—Mulch
Matters, Inc., Prime Tree, Inc., or appellant Prime Tree and Landscaping
Services, Inc. d/b/a Mulch Matters—was
the actual contracting party.  Because no
one challenges the trial court’s judgment on that basis on appeal, we need not
address that issue or distinguish between Bowe’s different companies in this
opinion.   

 





[4]
          The trial court’s interlocutory summary judgment merged into the final
judgment and is a proper subject of this appeal.  In re
Guardianship of Miller, 299 S.W.3d 179, 189 (Tex. App.—Dallas 2009, no
pet.).





[5]
          Exhibit A to Americon’s motion
was an affidavit of Bernice Carey proving up attached copies of Americon’s
Purchase Order and Mulch Matters’s estimate as true and correct copies. 





[6]           The
Honorable Sam Nuchia, Senior Justice, Court of Appeals for the First District
of Texas, participating by assignment.